| | |
|---|---|
| LESLIE A. BAILEY (SBN 232690)<br>lbailey@publicjustice.net<br>BRIAN HARDINGHAM (SBN 288773)<br>bhardingham@publicjustice.net<br>PUBLIC JUSTICE<br>475 14th St., Ste. 610<br>Oakland, CA 94612<br>Telephone: (510) 622-8150 | CHARLES MOORE*<br>cmoore@publicjustice.net<br>PUBLIC JUSTICE<br>1620 L Street NW, Suite 630<br>Washington, DC 20036<br>Telephone: (202) 797-8600<br><br>*Pro hac vice application forthcoming |

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP URQUIDI;<br><br>           Plaintiff,<br><br>   vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES OFFICIAL POLICE GARAGE, a non-profit corporation; CITY OF LOS ANGELES POLICE DEPARTMENT, a public entity; MICHEL R. MOORE, in his official capacity; and JON'S TOWING INC., a California corporation.<br><br>           Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1) **Declaratory and Injunctive Relief (42 U.S.C. § 1983)**<br>2) **Fourth Amendment (42 U.S.C. § 1983, Fourth Amendment)**<br>3) **Procedural Due Process (42 U.S.C. § 1983, Fourteenth Amendment, Cal. Const. Art. I § 7)**<br>4) **Excessive Fines (42 U.S.C. § 1983, Eighth Amendment, Cal. Const. Art. I § 17)**<br>5) **Substantive Due Process (42 U.S.C. § 1983, Fourteenth Amendment)**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Phillip Urquidi brings this action against the City of Los Angeles (the "City"); the City of Los Angeles Official Police Garage ("OPG"); the City of Los Angeles Police Department ("LAPD"); Michel R. Moore, in his official capacity; and Jon's Towing Inc. ("Jon's Towing") (collectively referred to as "Defendants") challenging, first, the initial towing of his vehicle in violation of the community caretaking exception to the Fourth Amendment's prohibition on warrantless seizures; second, Defendants' practice of unlawfully impounding vehicles—and then assessing excessive fines in order to recover such vehicles—without consideration of an individual's

ability to pay or homeless status; and, third, the danger created to Plaintiff through Defendants' actions depriving him of his vehicle and primary residence. Those actions and practices violate, *inter alia*, the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution as well as Article I, Sections 7 and 17 of the California Constitution. Accordingly, Plaintiff seeks injunctive and declaratory relief. In support of his Complaint, Plaintiff alleges the following:

## I. INTRODUCTION

1. In Los Angeles, Defendants have implemented a scheme whereby officers tow vehicles upon arrest—even if there is an authorized individual who can take possession of the vehicle; even if the alleged offense has no relation to the vehicle; and even if the vehicle is the person's only shelter—and towing companies demand exorbitant fees to secure the vehicles' release. Those vehicles remain on the lots of for-profit tow lots that contract with the City, unless the owner can access the cash needed—often hundreds or thousands of dollars—to pay for the vehicle's release. The less money the owner has, the less likely she will be able to pay, and, since the fines[1] increase every day, the poorest L.A. residents risk owing the most in fines. If a vehicle owner is too poor to pay the fines required, her only option is to forfeit her car permanently. At any point thirty-one days after the car is impounded, the tow company can schedule the car to be sold at auction and, if the sale price is lower than the fines owed at the time of sale, the City can pursue the owner for the difference. At no point in this process do Defendants provide *any* process by which an individual can demonstrate she lacks the means to pay. All the while, the legal owner of the vehicle is without the use of their car and perhaps, as in the case of many unhoused individuals, their sole shelter.

2. Practices such as the ones employed by Defendants can have devastating consequences for individuals whose cars are seized, while enriching municipalities and cooperating garages. *See, e.g.*, *In Memphis, Car Seizures Are a Lucrative and Punishing Police Tactic*, N.Y.

---

[1] While Defendants describe the multiple fines imposed in various ways—such as a "tow charge," "lien fee," "city tax," "vehicle release fee," "storage fee," and a number of other "rates," *see Towing and Storage Rates*, OPG (last visited Apr. 3, 2023), http://www.opgla.com/Rates; *Vehicle Detail*, Official Police Garages, https://www.opglaviic.com (last visited Apr. 3, 2023)—this filing refers to those amounts simply as "fines."

Times (Mar. 23, 2023), https://www.nytimes.com/2023/03/23/us/memphis-police-vehicle-seizures-forfeiture.html.

3. When Phillip Urquidi became homeless after losing his job over a year ago, he began sleeping in his truck. Since that time, his truck has been his only shelter. But when Mr. Urquidi was arrested, LAPD declined to either release the vehicle to his family or to legally park it, removed the truck from his family's home, and had it towed to Jon's Towing. Mr. Urquidi's car has remained there for over a month solely because he cannot afford to pay the excessive sum required by Defendants for the release of his vehicle. Defendants are aware that Mr. Urquidi is homeless and does not have the money to pay, but have refused to provide him with any opportunity to contest the fines or establish his inability to pay them. Further compounding the problem, the fines themselves continue to rise, and Mr. Urquidi does not have access to what was his only shelter.

4. Defendants' towing of Mr. Urquidi's truck was unlawful on the day it occurred. LAPD's manual dictates that the car should have been released to a family member, who was present and could have parked the car legally. By nonetheless towing Mr. Urquidi's car, LAPD officers acted unreasonably and beyond the bounds of the Fourth Amendment. What's more, by towing Plaintiff's vehicle, Defendants knowingly deprived him of his sole residence at a time when sleeping outdoors presented a heightened risk due to the severe inclement weather. Since then, the constitutional violations have only worsened. Mr. Urquidi has been denied due process through Defendants' refusal to consider his inability to pay, Defendants have demanded impermissibly excessive fines to procure the release of the vehicle, and Defendants knowingly created a distinct risk for Mr. Urquidi.

5. Defendants have deprived Mr. Urquidi his car during a period of historically devastating weather. That has left him without shelter at a time when winter conditions have made sleeping outside particularly dangerous. Grace Toohey, *Winter Storms Likely to Bring Los Angeles Its Longest Cold Snap in Almost 20 Years*, L.A. Times (Feb. 28, 2023), https://www.latimes.com/california/story/2023-02-28/southern-california-winter-storm-los-angeles-long-cold-streak (hereinafter "*Winter Storms Likely*"); Ruben Van Vives, Summer Lin, & Doug Smith, *Southern California Races to Shelter Homeless People as Frigid Storm Bears Down*,

-3-
COMPLAINT

L.A. Times (Feb. 23, 2023), https://www.latimes.com/california/story/2023-02-23/region-races-to-shelter-homeless-people-as-frigid-storm-bears-down (hereinafter "*Race to Shelter Homeless People*"); Claire Thornton, *Southern California Blizzard Warning Will Unleash 'Real Danger' Upon Unhoused People in LA County*, USA Today (February 23, 2023), https://www.usatoday.com/story/news/nation/2023/02/23/los-angeles-homeless-winter-storm-snow/11326042002. The extreme weather led Governor Gavin Newsom to declare a state of emergency, noting "conditions of extreme peril to the safety of persons and property exist due to these storms." *Proclamation of a State of Emergency*, Office of the Governor (March 1, 2023), https://www.gov.ca.gov/wp-content/uploads/2023/03/3.1.23-Storms-State-of-Emergency-signed.pdf?emrc=ac8179. Conditions grew so dire that there were even reports of unhoused individuals dying due to the cold. Eliza Kirk, *Unhoused Man Dies Outside of the Eagle Rock Vons During Cold Weather*, The Occidental (Mar. 8, 2023), https://theoccidentalnews.com/community/2023/03/08/unhoused-man-dies-outside-of-the-eagle-rock-vons-during-cold-weather/2908374.

6. Meanwhile, the costs of retrieving Plaintiff's car—already insurmountable on the day he was released from jail—have skyrocketed. At this point in time, Plaintiff would have to pay anywhere from $2,615.55 to $4,193.11 in order to have his vehicle returned to him. He can do nothing to stop those fines from accumulating.

7. If Mr. Urquidi cannot afford to pay the fines imposed before May 2nd, when Jon's Towing has scheduled his vehicle for sale, he faces the distinct risk that Defendants will sell his vehicle to recoup the amount of those fines. That result—along with Defendants' pattern and practice—offends the constitutional guarantee of procedural due process as well as the requirement that any fines imposed not be excessive.

## II. JURISDICTION

8. Plaintiff brings this suit under 42 U.S.C. § 1983, and the Court has jurisdiction to hear those claims under to 28 U.S.C. §§ 1331 and 1343. The Court also has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper because the causes of action alleged in this complaint occurred in the county of Los Angeles, which is located in the Central District of California.

**III. PARTIES**

10. Plaintiff Phillip Urquidi is 25 years old and resides in Los Angeles County. He brings this lawsuit on behalf of himself.

11. Defendant City of Los Angeles is a public entity organized and existing under the laws of the State of California. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies. The City owns, operates, manages, directs, and controls the Los Angeles Police Department, as well as its officers, employees, and other personnel. At all times relevant to the facts alleged herein, the City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

12. Defendant City of Los Angeles Official Police Garage is a non-profit corporation organized under 28 U.S.C. § 501(c)(4). OPG's members are the owners of the eighteen Official Police Garages contracted by the City to store impounded vehicles.

13. Defendant the City of Los Angeles Police Department has law enforcement jurisdiction over the City of Los Angeles. LAPD impounded or ordered the towing of Plaintiff's vehicle and contracts with OPG and Los Angeles-area garages, including Jon's Towing, for the storage of vehicles towed in Los Angeles.

14. Defendant Michel R. Moore is Chief of the LAPD and is responsible for formulating, executing, and administering the laws, customs, and practices that comprise LAPD's towing and storage policy. Defendant Moore is sued in his official capacity.

15. Jon's Towing Inc. is a California corporation with a principal place of business located at 7930 Deering Ave., Canoga Park, CA 91304. Jon's Towing has held Plaintiff's vehicle since February 20, 2023. Jon's Towing describes itself as an "Official Police Garage (OPG) for the Los Angeles Police Department" and "the official police garage for the Topanga Division." *About Us*, Jon's Towing Inc., http://jonstowinginc.com/about-us (last visited Apr. 4, 2023). Jon's Towing acts as a State actor by storing Plaintiff's vehicle under a contract with the City and LAPD.

## IV. FACTUAL ALLEGATIONS

### A. Defendants Unlawfully Towed and Stored Plaintiff's Vehicle Without Consideration for His Ability to Pay

16. Plaintiff has lived in his 2009 Nissan Titan pickup truck, which has a Texas license plate, number MDJ6724, for over a year.

17. Plaintiff supports himself through warehouse work he obtains through a temporary staffing agency. He relies on CalFresh benefits for food assistance.

18. On or about February 20, 2023, Plaintiff was arrested by LAPD.

19. The incident that served as the basis for Plaintiff's arrest took place at 21047 Cohasset St. Canoga Park, CA 91303.

20. Plaintiff's grandmother and aunt live next door at 21041 Cohasset Street, Canoga Park, 91303.

21. At the time of his arrest, Plaintiff's vehicle was on a small residential street outside of his grandmother and aunt's home, feet from the curb.

22. Upon his arrest, rather than tow his truck, Plaintiff requested that LAPD give the keys to this vehicle to his family members, who were home at the time, or simply park the truck and give him the keys with the rest of his belonging upon his release from jail. LAPD declined that request.

23. At the time Plaintiff was arrested and his vehicle was towed, Defendants were aware that he was homeless and that he relied on his truck for shelter.

24. Plaintiff was booked at the Topanga Police Station.

25. Plaintiff's vehicle was towed and stored at Jon's Towing.

26. During late February 2023, Los Angeles had experienced extreme cold and snow, and forecasts showed that such weather would continue in the coming weeks. *Winter Storms Likely*. The inclement weather "raised the danger level for thousands of people living outdoors, with a forecast of [] days of rain, freezing temperatures, blizzard-strength wind and low-elevation snow." *Race to Shelter Homeless People*.

27. When an individual is arrested, LAPD policy dictates that "officers must [] determine if the totality of the circumstances supports impoundment of the vehicle under the Community Caretaking Doctrine. When a driver is arrested, the vehicle **should not** be impounded under the following circumstances:

- If the arrestee is the registered owner and the vehicle is parked in the arrestee's residential driveway or a legal parking space in the immediate vicinity of the arrestee's residence;
- If the vehicle is parked in a legal parking space where it is not posing a traffic hazard and is not likely to be a target of vandalism or theft; or,
- If a licensed passenger is present and not impaired or otherwise unable to lawfully operate the vehicle and is given permission by the registered owner."

*2022 Department Manual*, LAPD, Vol. 4 § 222.05 (Impounding Vehicles When the Driver is Arrested) (Jan. 26, 2023), available at: https://www.lapdonline.org/lapd-manual (emphasis in original).

28. Departmental policy further provides: "An employee may impound an illegally parked vehicle when it: [o]bstructs the normal movement of traffic; [i]s left standing upon a street or highway; and, [i]s impracticable to move the vehicle to a legal parking space in the near vicinity." *Id.* § 222.20 (Illegally Parked Vehicle).

29. After his arrest, Plaintiff was charged with a violation of Section 166(c)(1) of the California Penal Code and spent nine days in jail on Case No. LAV3VW01341-01. Plaintiff pleaded no contest to an offense under that statute and was released from jail on February 28, 2023.

30. A few days after his release from jail, Plaintiff learned that his vehicle was being stored by Jon's Towing. Plaintiff traveled to the garage and learned that Jon's Towing would not release the vehicle until he paid fines, totaling over eight hundred dollars at that time. He was told that fines would continue to accrue for each day that the vehicle remained on the lot. Plaintiff could not afford to pay the fines.

31. Without his truck, Plaintiff has been forced to sleep outside and, when possible, to rely on local family to take him in.

32. On March 22, 2023, Plaintiff's counsel spoke with a representative of Jon's Towing, who stated that the vehicle is in the lot and that it would only be released upon payment of the full

balance. At that time, the balance, according to the representative from Jon's Towing, amounted to $2,013.70. That representative stated that the fine would increase at a rate of $48 for each day the vehicle remained on the lot.

33. On March 23, 2023, counsel spoke with Detective Flores, the Auto Supervisor at the Topanga station, and counsel learned that LAPD has no process for assessing an individual's ability to pay.

34. On March 24, 2023, counsel spoke with Mr. Watts of LAPD's Topanga Division, who was identified as the Auto Clerk. During that conversation, Mr. Watts suggested that many individuals who are unable to procure the release of their vehicles immediately ultimately forfeit them to the impounding garage so as to avoid the continued accumulation of fines.

35. On March 27, 2023, Plaintiff's counsel again inquired as to the amount owed to Jon's Towing and was informed that the amount due had risen to $2,227.10. Additionally, Plaintiff's counsel learned that no sale of the vehicle had yet been scheduled, but that one may be scheduled imminently.

36. That same day, Plaintiff's counsel sent a letter to the Los Angeles City Attorney's Office demanding that the City waive all costs and release Plaintiff's vehicle immediately. Jon's Towing was copied on that letter. Counsel requested a response within forty-eight hours.

37. On March 29, 2023, the City Attorney's Office responded by email stating that the City's position is that Mr. Urquidi's truck "was lawfully impounded when [he] was arrested" and that "[t]he City is not obligated to conduct an ability to pay hearing in connection with vehicle impounds."

38. On April 3, 2023, counsel learned in a phone call to Jon's Towing that $2,615.55 was owed on the truck and that a sale had been scheduled for May 2, 2023.

39. On April 4, 2023, according to OPG's public search function, the amount of fines is as follows: a $156.50 tow charge, a $50.00 lien fee, $0.00 for other fees, $184.36 for a city tax, a $115.00 vehicle release fee, and $1,843.63 for storage. *Vehicle Detail*, Los Angeles Official Police Garages, https://www.opglaviic.com (last visited Apr. 4, 2023). On that web page, in a section titled "Impound Info," LAPD is listed as the "agency" and Jon's Towing as the "location." *Id.*

40. The "total charge," according to the OPG search, is $4,193.11. *Id.* This amount does not match the total of the fines listed on OPG's public search function ($2,349.49) nor the amount stated by Jon's Towing ($2,615.55).

41. To date, Plaintiff's vehicle has not been returned and remains stored on the lot by Jon's Towing.

**B.  Legal Framework**

42. Defendants have a policy and practice of towing and storing vehicles in Los Angeles with complete disregard for an individual's ability to pay or whether the individual is homeless and needs the vehicle for shelter. Once impounded, Defendants impose unjustifiable fines that work to deprive individuals permanently of their vehicles. Defendants have deprived Plaintiff of his vehicle—which was also his sole residence—since February 20, 2023. Defendants demand thousands of dollars in order to release the vehicle. These practices run afoul of the Constitutions of the United States and California.

43. Defendants derive their authority to tow and store vehicles from Section 22651 of the California Vehicle Code. That statute provides that "a peace officer . . . may remove a vehicle located within the territorial limits in which the officer or employee may act . . . [i]f an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." Cal. Veh. Code § 22651(h).

44. Once a vehicle "is removed pursuant to" Section 22651, "the vehicle may be impounded." *Id.* § 22651(i).

45. "A vehicle shall be released to the legal owner . . . if the legal owner . . . [p]ays the cost of towing and storing the vehicle." *Id.* § 22651(i)(4)(A).

46. Upon removal, "the keeper [of the garage where the vehicle is stored] shall have a lien dependent upon possession for his or her compensation for towage and for caring for and keeping safe the vehicle." *Id.* § 22851(a)(1).

47. The statute defaults to a lien "for a period not exceeding 60 days." *Id.* For vehicles on a sixty-day lien, those "with a value determined to be four thousand dollars ($4,000) or less, the

lienholder shall apply to the [California Department of Motor Vehicles] for the names and addresses of the registered and legal owners of record." Cal. Civ. Code § 3072(a). Upon receipt of those names and addresses, the lienholder must send a Notice of Pending Lien Sale form "to the registered owner and legal owner" as well as "any other person known to have an interest in the vehicle." *Id.* § 3072(b). Such notice shall state, among other things, "[t]he specific date, exact time, and place of sale, which shall be set not less than 31 days, but not more than 41 days, from the date of mailing." *Id.* § 3072(c)(2). If, within ten days of the date mailing the Notice of Pending Lien Sale, a Declaration of Opposition "is signed and returned, the lienholder shall be allowed to sell the vehicle only if he or she obtains a court judgment or if he or she obtains a subsequent release from the declarant or if the declarant cannot be served as described in subdivision (e)." *Id.* § 3072(c)(4)(D).

48. Alternatively, the lien will be for a period of 120 days "if an application for an authorization to conduct a lien sale has been filed pursuant to Section 3068.1 of the Civil Code within 30 days after the removal of the vehicle to the garage." Cal. Veh. Code § 22851(a)(1). An application for an authorization to conduct a lien sale may be filed for a number of reasons, including if a Declaration of Opposition is filed or if the vehicle at issue has an out-of-state registration. Cal. Civ. Code § 3068.1(b). Such an application must be made "for any vehicle with a value determined to be over four thousand dollars ($4,000)." *Id.* § 3071(a). "Upon receipt of authorization to conduct the lien sale from the department, the lienholder shall . . . [a]t least five days, but not more than 20 days, prior to the lien sale, not counting the day of the sale, give notice by advertising once in a newspaper of general circulation" and send a Notice of Pending Lien Sale form "20 days prior to the sale" to the registered and legal owners as well as "[a]ll persons known to have an interest in the vehicle." *Id.* § 3071(f).

49. "The proceeds of a vehicle lien sale . . . shall be disposed of as follows: (a) The amount necessary to discharge the lien and the cost of processing the vehicle shall be paid to the lienholder. . . . (b) The balance, if any, shall be forwarded to the Department of Motor Vehicles . . . ." *Id.* § 3073(a), (b).

50. For its part, the impounding agency "has a lien on the surplus that remains upon the sale of a vehicle," and "has a deficiency claim against the registered owner . . . for all local

administrative charges imposed pursuant to Section 22850.5, less the amount received from the sale of the vehicle." Cal. Veh. Code § 22651(i)(5).

51. Within ten days after the towing and storage, the registered owner of the vehicle may request "a poststorage hearing to determine the validity of the storage." *Id.* at § 22852(a). Defendants conduct these hearings solely "to determine whether probable cause existed to impound a particular vehicle and to determine who is responsible for the payment of the impound and/or storage fees."). *2022 Department Manual*, Vol. 4 § 226.05 (Post-Impound Hearings).

52. "The public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh. Code § 22852(c). If after the hearing the agency determines there are "no reasonable grounds for the storage," then "[t]he agency employing the person who directed the storage shall be responsible for the costs incurred for towing and storage . . . ." *Id.* § 22852(e).

53. However, Defendants expressly do not consider an individual's ability to pay the fines assessed for the towing and storage of the vehicle in a post-impound hearing. *See Fitzpatrick v. City of Los Angeles*, No. 2:21-cv-06841-JGB-SP, ECF No. 106 at 22 (C.D. Cal. Jan. 31, 2023) (finding that the City provides "no meaningful opportunity to raise indigency until after a substantial, and potentially final and irreversible, deprivation has already occurred.").

54. If the owner of a vehicle is unable to pay for the release of his or her vehicle, the vehicle may be sold. Cal. Veh. Code § 22851.1(a) ("If the vehicle is impounded pursuant to subdivision (i) of Section 22651 and not released as provided in that subdivision, the vehicle may be sold pursuant to this chapter to satisfy the liens specified in Section 22851 and in subdivision (b) of this section.").

55. According to OPG's website, "[t]he City of Los Angeles and the Los Angeles Police Commission regulate and set the towing and storage rates for the Official Police Garages. The towing and storage charges must be paid before the release of a vehicle." *Towing and Storage Rates*, OPG (last visited Apr. 4, 2023), http://www.opgla.com/Rates.

56. Defendants have set the following daily storage rates and charges for vehicles towed in the City of Los Angeles as of January 1, 2023: $47.50 a day for storage of a standard vehicle

($48.50 if the payment is made by credit card), a "City of L.A. Release fee" in the amount of "$115.00 for each vehicle released," and a "10% city parking occupancy tax is collected on all storage fees." *Id.*

### C.     Defendants Unlawfully Impounded Plaintiff's Vehicle in Violation of the Fourth Amendment

57.    "A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). One such exception is the "community caretaking" doctrine, which "is available only to 'impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012)).

58.    A warrantless seizure under the guise of community caretaking is permissible only if it is done "in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016).

59.    On or about February 20, 2023, LAPD ordered the seizure of Plaintiff's vehicle when the Fourth Amendment and departmental policy demanded that the vehicle be released to Plaintiff's family or otherwise safely moved the mere feet required to ensure the vehicle was legally parked.

60.    LAPD policy commands officers **not to** impound a vehicle upon arrest when it is parked in the owner's driveway or "a legal parking space in the immediate vicinity of the arrestee's residence," if it is legally parked and "not likely to be a target of vandalism or theft," or if there is a licensed passenger available and authorized by the owner to take possession of the vehicle. *2022 Department Manual*, Vol. 4 § 222.05 (Impounding Vehicles When the Driver is Arrested).

61.    If a car is illegally parked, LAPD policy allows for impoundment only if it "[i]s impracticable to move the vehicle to a legal parking space in the near vicinity." *Id.* § 222.20.

62.    At worst, Plaintiff's vehicle was parked mere feet from a legal parking space, next door to his family's residence.

63. The Fourth Amendment requires reasonable action by the officers. In this instance, it was not reasonable to remove Plaintiff's vehicle from the immediate vicinity of his family's home, especially when family members were available and authorized to take possession of the vehicle.

64. Impounding Plaintiff's vehicle violated departmental policy and was unreasonable under the Fourth Amendment.

### D. Defendants Violate Due Process Through Their Practice of Towing and Storage of Vehicles Without Assessing an Individual's Ability to Pay

65. The U.S. and California Constitutions both guarantee due process of law. U.S. Cont. Amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."); Cal. Const. Art. I § 7 ("A person may not be deprived of life, liberty, or property without due process of law.").

66. Procedural due process of law requires notice and an opportunity to be heard. *See generally Mathews v. Eldridge* 424 U.S. 319 (1976). Moreover, "due process of law requires . . . an ability to pay hearing [to] ascertain [an individual's] present ability to pay" before the imposition of fines. *People v. Dueñas*, 30 Cal. App. 5th 1157, 1164 (Cal. App. 2019).

67. "[T]he uninterrupted use of one's vehicle is a significant and substantial private interest," *Grimm v. City of Portland*, 971 F.3d 1060, 1063 (9th Cir. 2020), thus implicating due process protections. *See also id.* ("Towing practices disproportionately prejudice low-income populations as towing can permanently deprive low-income individuals of their vehicles (which often serve as their sole source of income or even their home)." (cleaned up )).

68. By towing and storing Plaintiff's vehicle with no consideration of Plaintiff's ability to pay, Defendants have flouted constitutional due process requirements. *Fitzpatrick*, No. 2:21-cv-06841-JGB-SP, ECF No. 106 at 25 ("[N]one of the procedural safeguards present in the storage hearing permit the impounding agency to order the immediate release of a vehicle for lack of constitutional authority, or seemingly even to consider equitable grounds . . . .").

69. By storing Plaintiff's vehicle without a consideration of his ability to pay, Defendants violate due process.

**E.      The Costs Imposed by Defendants Constitute Unconstitutional Excessive Fines**

70.     The Eighth Amendment of the U.S. Constitution mandates that "excessive fines" shall not be imposed. U.S. Cont. Amend. VIII. The California Constitution likewise prohibits the imposition of "excessive fines." Cal. Const. Art. I § 17.

71.     "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Austin v. United States*, 509 U.S. 602, 610 (1993).

72.     Under both the federal and state constitutions, courts considering a claim under the Excessive Fines Clause must consider an individual's ability to pay. *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 37 Cal. 4th 707, 728 (Cal. 2005); *City of Seattle v. Long*, 493 P.3d 94, 114 (Wash. 2021)

73.     By demanding the payment of fines in order to procure release of Plaintiff's vehicle, Defendants have imposed unconstitutional fines.

74.     The fines imposed by Defendants to procure release of Plaintiff's vehicle are real and not theoretical. Plaintiff has been informed—and the statutory scheme provides—that his vehicle will not be released until he pays the amount owed.

75.     The fines imposed by Defendants cannot properly be characterized as remedial. Rather, because they were imposed on Mr. Urquidi as a consequence of his arrest, they are at least partially punitive, imposing on Plaintiff an unjustifiable penalty that has deprived Plaintiff not only of his vehicle, but also his home. *See United States v. Bajakajian*, 524 U.S. 321, 328–29 (1998); *Long*, 493 P.3d at 110 (holding impound fines imposed by the city and a tow company constitute a partially punitive fine for Excessive Fines Clause purposes under *Bajakajian*).

76.     Moreover, Defendants' fines are grossly disproportional. *See, e.g.*, *Long*, 493 P.3d 94 (holding that a $500 fine payable over time on a payment plan was excessive for an unhoused individual).

77.     Not only are the fines paid disproportional to the original offense for which Plaintiff was charged for his conduct on the night of the impound, the fines have continued to increase each day he fails to pay his outstanding fines.

### F. Defendants Have Imposed a State-Created Danger by Seizing Plaintiff's Vehicle When They Were Aware It Served as His Sole Residence

78. The substantive component of the Due Process Clause under the Fourteenth Amendment protects a person's liberty interest in their own bodily security. *See Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977); *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989).

79. A state-created danger may arise when government actions deprive an individual of their vehicles or shelters in the face of bad weather or other dangerous conditions. *See, e.g.*, *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *Wood*, 879 F.2d at 586; *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996).

80. Defendants seized Plaintiff's vehicle—and deprived him of his sole residence—at a time when the homeless population in Los Angeles faced extraordinary risks due to the extreme weather conditions. *Winter Storms Likely*; *Race to Shelter Homeless People*; *Proclamation of a State of Emergency*.

81. Defendants knowingly engaged in affirmative conduct by towing, impounding, and refusing to release Plaintiff's truck in a way that rendered him without shelter.

82. Defendants had knowledge that Plaintiff was homeless at the time his car was towed and, therefore, were not only aware of the risk to Plaintiff but also acted with a callous disregard for the dangers.

## COUNT ONE

### Declaratory and Injunctive Relief

(Against All Defendants)

(42 U.S.C. § 1983, Cal. Const. Art. I § 7)

83. Plaintiff incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

84. The towing and storage of Plaintiff's vehicle violates the community caretaking exception to the Fourth Amendment's prohibition on warrantless seizures by towing Plaintiff's vehicle.

85. LAPD did not adhere to departmental policy or the Fourth Amendment in seizing Plaintiff's vehicle.

86. Defendants have also violated the Eighth and Fourteenth Amendments of the U.S. Constitution because Defendants employ a practice of failing to consider individuals' ability to pay the fines associated with storage, and also require the payment of excessive fines as a condition of release of the vehicle.

87. Additionally, Defendants have violated Plaintiff's substantive due process protections under the Fourteenth Amendment by knowingly imposing a state-created danger by towing his truck.

88. The acts alleged herein constitute a custom, practice, and/or policy of the City, OPG, LAPD, Mr. Moore, and Jon's Towing.

**COUNT TWO**

**Fourth Amendment**

(Against All Defendants)

(42 U.S.C. § 1983, U.S. Cont. Amend. XIV, Cal. Const. Art. I § 7)

89. Plaintiff incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

90. Defendants the City and LAPD ordered the towing of Plaintiff's vehicle on February 20, 2023 in contravention of the Fourth Amendment.

91. There was no reasonable justification for the towing pursuant to LAPD policy and the community caretaking exception to the Fourth Amendment.

92. Due to Defendants actions, Plaintiff's vehicle remains impounded at the lot of Jon's Towing.

93. The acts alleged herein constitute a custom, practice, and/or policy of the City, OPG, LAPD, Mr. Moore, and Jon's Towing.

**COUNT THREE**

**Procedural Due Process**

(Against All Defendants)

(42 U.S.C. § 1983, U.S. Cont. Amend. XIV, Cal. Const. Art. I § 7)

94. Plaintiff incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

95. Defendants have impounded Plaintiff's vehicle and offered him inadequate procedural due process under the Fourteenth Amendment.

96. Among other procedural defects, Defendants have failed to consider Plaintiff's ability to pay excessive fines associated with the towing and storage of his vehicle.

97. Plaintiff has a substantial interest in his vehicle, which is also his sole residence.

98. The risk of erroneous deprivation through the procedures used by Defendants is high.

99. The government's interests do not predominate,

100. The acts alleged herein constitute a custom, practice, and/or policy of the City, OPG, LAPD, Mr. Moore, and Jon's Towing.

**COUNT FOUR**

**Excessive Fines**

(Against All Defendants)

(42 U.S.C. § 1983, U.S. Cont. Amend. VIII, Cal. Const. Art. I § 17)

101. Plaintiff incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

102. The fines imposed by Defendants associated with the towing and storage of Plaintiff's vehicle constitute fines under the Eighth Amendment.

103. The fines imposed and demanded by Defendants to procure release of Plaintiff's vehicle are excessive, are not solely remedial, and are grossly disproportional.

104. The acts alleged herein constitute a custom, practice, and/or policy of the City, OPG, LAPD, Mr. Moore, and Jon's Towing.

## COUNT FIVE

**Substantive Due Process**

(Against All Defendants)

(42 U.S.C. § 1983, U.S. Cont. Amend. VIII)

105. Plaintiff incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

106. Defendants towed Plaintiff's vehicle and have refused to release it. Those actions have affirmatively deprived Plaintiff of shelter.

107. The danger to Plaintiff was obvious to Defendants, as Defendants were aware that Plaintiff was homeless and that he depended on his truck for shelter.

108. Defendants acted with deliberate indifference.

WHEREFORE, Plaintiff requests that this Court issue the following relief:

a. A temporary restraining order requiring Defendants to release Plaintiff's vehicle and waive all costs associated with its towing and storage;

b. A temporary restraining order preventing Defendants from selling Plaintiff's vehicle;

c. A declaration that Defendants' towing and storage policy, as detailed herein, is unconstitutional and is of no force or effect;

d. An award to Plaintiff for his expenses, costs, fees, and other disbursements associated with the filing and maintenance of this action, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and Rule 54 of the Federal Rules of Civil Procedure; and

e. Any other relief in equity or law that the Court deems just and proper.

DATED: April 5, 2023

Respectfully Submitted,

PUBLIC JUSTICE

By: */s/ Leslie A. Bailey*
LESLIE A. BAILEY
Attorney for Plaintiff