LESLIE A. BAILEY (SBN 232690)
lbailey@publicjustice.net
BRIAN HARDINGHAM (SBN 288773)
bhardingham@publicjustice.net
PUBLIC JUSTICE
475 14th St., Ste. 610
Oakland, CA 94612
Telephone: (510) 622-8150

*Attorneys for Plaintiff*

CHARLES MOORE*
cmoore@publicjustice.net
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600

*Pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP URQUIDI; | Case No. 2:23-cv-02568 |
| Plaintiff, | **PLAINTIFF'S APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES OFFICIAL POLICE GARAGE, a non-profit corporation; CITY OF LOS ANGELES POLICE DEPARTMENT, a public entity; MICHEL R. MOORE, in his official capacity; and JON'S TOWING INC., a California corporation. | Complaint filed: April 5, 2023 |
| Defendants. | |

Plaintiff Phillip Urquidi hereby applies for a temporary restraining order ("TRO") precluding Defendant Jon's Towing Inc. ("Jon's Towing") from effecting a lien sale of Plaintiff's 2009 Nissan Titan (Texas license plate number MDJ6724), and ordering Defendants the City of Los Angeles (the "City"), the City of Los Angeles Official Police Garage ("OPG"), the City of Los Angeles Police Department ("LAPD"), Michel R. Moore, and Jon's Towing to release Mr. Urquidi's vehicle without payment of fines, fees, or other charges.

This application is pursuant to Rule 65 of the Federal Rules of Civil Procedure, as well as Local Rule 65-1, and is based on the concurrently filed Declarations of Phillip Urquidi, Brian Hardingham, and Charles Moore; the attached memorandum of points and authorities; and the records and files of this case.

**Re Notice:**

By emailed delivery on April 5, 2023, Plaintiff's counsel gave notice of the instant application to counsel for the City and to Jon's Towing. On April 5, 2023, Plaintiff's counsel filed the documents contained herein via electronic filing. To date, undersigned counsel has not received a response containing Defendants' position.

DATED: April 5, 2023

Respectfully Submitted,

PUBLIC JUSTICE

By: /s/ *Leslie A. Bailey*
LESLIE A. BAILEY
Attorney for Plaintiff

1

# **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.    INTRODUCTION.................................................................................................................1

II.   BACKGROUND..................................................................................................................3

    A.   Defendants Are Currently Storing Mr. Urquidi's Vehicle and Have Demanded at Least $2,615.55 to Procure Its Release ............................................3

    B.   Defendants Fail to Provide Any Procedural Mechanism to Allow Mr. Urquidi to Demonstrate an Inability to Pay ..............................................................4

III.  ARGUMENT .......................................................................................................................5

    A.   Legal Standard............................................................................................................5

    B.   Mr. Urquidi is Likely to Succeed on the Merits.........................................................6

        1.   Defendants' Impounding of Mr. Urquidi's Vehicle Constituted an Unlawful Seizure Under the Fourth Amendment. ........................................6

        2.   Defendants' Towing and Storage of Mr. Urquidi's Vehicle Without Regard to His Inability to Pay Violates Due Process............................8

        3.   Defendants' Imposition of Fines of at Least $2,615.55 Violates the Excessive Fines Clause. ...........................................................................11

            (a)   The Fines Are Not Merely Remedial as They Serve, at Least in Part, as Punishment. .............................................................11

            (b)   The Fines Are Grossly Disproportional Given the Offense Charged and Mr. Urquidi's Economic Means. ...............................12

        4.   Defendants Knowingly Created a Danger by Depriving Mr. Urquidi of His Vehicle During a Period of Risk Due to Inclement Weather. ..........14

    C.   Mr. Urquidi Will Suffer Irreparable Harm. ..............................................................17

    D.   The Balance of the Equities and Public Interest Tilt in Favor of a Temporary Restraining Order. .................................................................................17

    E.   The Court Should Waive the Posting of Security. ....................................................18

IV.  CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Austin v. United States*, 509 U.S. 602 (1993).................................................................. 11, 12

*Blakes v. Superior Ct.*, 72 Cal. App. 5th 904 (Cal. App. 2021) ...................................... 7

*Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017)........................................................... 2, 6

*City of Seattle v. Long*, 493 P.3d 94 (Wash. 2021) ...................................... 2, 10, 12, 14

*Dep't of Revenue of Mont. v. Kurth Ranch*, 511 US 767 (1994)...................................... 11

*Farina v. Metropolitan Trans. Auth.*, 409 F. Supp. 3d 173 (S.D.N.Y. 2019) ................................ 12

*Fitzpatrick v. City of Los Angeles*, No. 2:21-cv-06841-JGB-SP, ECF No. 106 (C.D. Cal. Jan. 31, 2023) ....................................................................... passim

*Florida v. Jimeno*, 500 U.S. 248 (1991)........................................................................... 6

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020)............................................. 8

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012) ............................................... 3, 14, 15

*Ingraham v. Wright*, 430 U.S. 651 (1977) ...................................................................... 14

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) .................................................... 17

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) .................................................... 18

*Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006) ..................................... 15, 16

*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) ............................................................ 15

*L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) .......................................................... 14, 16

*Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012)........................................ 17

*Lemmon v. Pierce County*, No. C-21-5390-RSL, 2021 WL 3665855 (W.D. Wash. Aug. 18, 2021)................................................................................................... 13, 14

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..................................................................... 8

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ................................................. 16, 17

*Miller v. Carlson*, 768 F. Supp. 1331 (N.D. Cal. 1991) ................................................. 18

*Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005) .......................................... 7

*Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000) ............................... 15, 16

*Ordonez v. Stanley*, 495 F. Supp. 3d 855 (C.D. Cal. 2020) .......................................... 10

*Orloff v. Cleland*, 708 F.2d 372 (9th Cir. 1983)............................................................. 8

*Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997)...................................... 14

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 37 Cal. 4th 707 (Cal. 2005)................. 13, 14

*People v. Cowan*, 47 Cal. App. 5th 32 (Cal. App. 2020) ........................................ 11, 13

*People v. Dueñas*, 30 Cal. App. 5th 1157 (Cal. App. 2019) ........................................ 9

*People v. Lee*, 40 Cal. App. 5th 853 (Cal. App. 2019)........................................... 7

*Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020)................................... 13

*Platt v. Moore*, 15 F.4th 895 (9th Cir. 2021) .................................................. 10

*Poretti v. Dzurenda*, 11 F.4th 1037 (9th Cir. 2021) ........................................... 17

*Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079 (E.D. Cal. 2012)............................... 15

*Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018).................................... 10

*Smith v. Reiskin*, No. C-18-01239-JSW, 2018 WL 7820727 (N.D. Cal. Oct. 10, 2018) ............. 17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ................... 5

*Stypmann v. City & County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977)...................... 9

*United States v. Bajakajian*, 524 U.S. 321 (1998) ........................................ 11, 12, 13

*United States v. Caseres*, 533 F.3d 1064 (9th Cir. 2008)........................................ 6, 7

*United States v. Hawkins*, 249 F.3d 867 (9th Cir. 2001)........................................ 6

*United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016) ........................................ 6

*Ward v. Village of Monroeville, Ohio*, 409 U.S. 57 (1972) ...................................... 10

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)....................................... 5, 17

*Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) ........................................ 14, 15, 16

**Constitutional Provisions**

Cal. Const. Art. I § 17 ....................................................................... 11

Cal. Const. Art. I, § 7 ........................................................................ 8

U.S. Const. Amend. VIII....................................................................... 11

U.S. Const. Amend. XIV, § 1................................................................... 8

**Statutes**

Cal. Penal Code § 166(c)(1)................................................................... 13

Cal. Veh. Code § 22650 *et seq.* .............................................................. 4

Cal. Veh. Code § 22651(h).................................................................................................. 4

Cal. Veh. Code § 22651(i)(1)............................................................................................... 4

Cal. Veh. Code § 22651(i)(4)(A)......................................................................................... 4

Cal. Veh. Code § 22651(i)(5).............................................................................................. 4

Cal. Veh. Code § 22851(a)(1)............................................................................................. 4

Cal. Veh. Code § 22851.1(a)............................................................................................... 4

Cal. Veh. Code § 22852(a).................................................................................................. 5

Cal. Veh. Code § 22852(c)............................................................................................. 5, 10

Cal. Veh. Code § 22852(e).................................................................................................. 5

**Rules**

Fed. R. Civ. P. 65(c)......................................................................................................... 17

**Other Authorities**

*2022 Department Manual*, LAPD, Vol. 4,
    https://lapdonlinestrgeacc.blob.core.usgovcloudapi.net/lapdonlinemedia/2023/01/V
    OLUME-4-word-1.pdf (Jan. 26, 2023) ...................................................... 5, 6, 7

*Proclamation of a State Of Emergency*, Office of the Governor (March 1, 2023),
    https://www.gov.ca.gov/wp-content/uploads/2023/03/3.1.23-Storms-State-of-
    Emergency-signed.pdf?emrc=ac8179 .......................................................... 16

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff Phillip Urquidi requests an *ex parte* TRO precluding Defendant Jon's Towing from effecting a lien sale of Plaintiff's vehicle, and ordering Defendants to return Mr. Urquidi's vehicle without charge. The City and LAPD seized Mr. Urquidi's vehicle in violation of the Fourth Amendment and without justification under the community caretaking doctrine. Since that seizure, Mr. Urquidi's vehicle has remained stored by Jon's Towing. Defendants have demanded payment of exorbitant fines[1] in exchange for the release of the vehicle. Those fines—which now total anywhere from $2,615.55 to $4,193.11—have been imposed without consideration for Mr. Urquidi's ability to pay and in an amount grossly disproportional to his offense. Moreover, Defendants knowingly created a significant danger to Plaintiff by towing his vehicle, which he relies on as his sole residence. Accordingly, Mr. Urquidi requests that the Court grant his *ex parte* application, and: (1) preclude Jon's Towing from effecting a lien sale; and (2) order Defendants to release Mr. Urquidi's truck without payment of any fines imposed.

## I.   <u>INTRODUCTION</u>

Phillip Urquidi is indigent. He has been homeless for over a year. During that time, he has depended on his 2009 Nissan Titan pickup truck for shelter. On February 20, 2023, LAPD arrived at the neighboring home of Mr. Urquidi's grandmother and aunt. Upon their arrival, they arrested Mr. Urquidi and impounded his vehicle, declining his request to release the vehicle to his family members next door or to otherwise move the vehicle mere feet to a legal parking spot. Mr. Urquidi was released from jail on February 28, 2023, but his truck remains impounded at Jon's Towing because he lacks the ability to pay the thousands of dollars Defendants demand as a condition of releasing the car—and Defendants are continuing to pile on more fines every day. These policies and practices violated—and continue to violate—Mr. Urquidi's constitutional rights.

---

[1] While Defendants describe the multiple fines imposed in various ways—such as a "tow charge," "lien fee," "city tax," "vehicle release fee," "storage fee," and a number of other "rates," *see Towing and Storage Rates*, OPG (last visited Apr. 4, 2023), http://www.opgla.com/Rates; *Vehicle Detail*, Official Police Garages, https://www.opglaviic.com (last visited Apr. 4, 2023)—this filing refers to those amounts simply as "fines."

*First*, Defendants' decision to tow Mr. Urquidi's truck constitutes an unreasonable seizure that runs afoul of the community caretaking exception to the Fourth Amendment's protections against warrantless seizures. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). The Fourth Amendment requires that law enforcement act reasonably and in adherence to departmental policy when engaging in community caretaking. That was not done here and, as a result, Defendants cannot justify their tow of Mr. Urquidi's vehicle.

*Second*, even if the tow itself had been valid under the Fourth Amendment, Defendants' practice surrounding the towing and storage of vehicles, at a minimum, "violates due process." *Fitzpatrick v. City of Los Angeles*, No. 2:21-cv-06841-JGB-SP, ECF No. 106 at 30 (C.D. Cal. Jan. 31, 2023) (hereinafter "*Fitzpatrick*"). This is because Defendants provide "no meaningful opportunity to raise indigency until after a substantial, and potentially final and irreversible, deprivation has already occurred." *Id.* at 22. Ultimately, the process provided by Defendants is no more than "weak tea—a feeble substitute for court-driven processes . . . ." *Id.* at 30.

*Third*, the fines resulting from this inadequate process are constitutionally excessive and cannot be justified as merely remedial. The fines imposed here are at least partially punitive and grossly disproportional to the offense which served as the predicate for the towing and storage of the vehicle. *Id.* at 48; *City of Seattle v. Long*, 493 P.3d 94, 114 (Wash. 2021). Mr. Urquidi was arrested for a violation of Section 166(c) of the California Penal Code, an offense to which he ultimately pleaded guilty and which carries a maximum fine of $1,000. The additional fines Defendants have sought to impose far exceed what the California legislature deemed appropriate for this offense. Additionally, Defendants' towing and storage scheme imposes further fines for a failure to pay the amount assessed to procure release of a vehicle, and those fines are unconstitutionally excessive in the context of Mr. Urquidi's modest means. Each day that Mr. Urquidi remains unable to pay the fines assessed, the fines increase and Defendants inch closer to selling the vehicle.

*Fourth*, Defendants have knowingly imposed a state-created danger by towing and storing Mr. Urquidi's vehicle, thereby depriving him of his sole residence during a period of extreme inclement weather. Defendants' actions constitute a violation of Mr. Urquidi's substantive due

process rights, as they subjected Mr. Urquidi to dangerous conditions he would not have otherwise faced. *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012).

In sum, Defendants' towing and storage of Mr. Urquidi's vehicle is unconstitutional. Accordingly, the Court should issue a TRO ordering Defendants to: (1) refrain from selling the vehicle; and (2) release the truck without payment of any fines.

## II.   BACKGROUND

### A.   Defendants Are Currently Storing Mr. Urquidi's Vehicle and Have Demanded at Least $2,615.55 to Procure Its Release.

On February 20, 2023, Mr. Urquidi was arrested outside the residence of his grandmother and other family at 21041 Cohasset Street, Canoga Park, 91303. Declaration of Phillip Urquidi ¶ 4. Upon his arrest, LAPD denied Mr. Urquidi's request to leave the vehicle with his family or to leave the truck parked on the street. *Id.* Instead, LAPD chose to impound his 2009 Nissan Titan pickup truck with Texas license plate number MDJ6724. *Id.* At that time, Mr. Urquidi was residing in his truck. *Id.* ¶ 3. Mr. Urquidi was booked at the Topanga Police Station. *Id.* ¶ 5. His vehicle was towed to Jon's Towing, *see id.* ¶ 7, "the official police garage for the Topanga Division," *About Us*, Jon's Towing Inc., http://jonstowinginc.com/about-us (last visited Apr. 4, 2023). Mr. Urquidi was not released from jail until February 28, 2023, after he entered a plea of *nolo contendere* to an offense under Section 166(c) of the California Penal Code. Declaration of Charles Moore ¶¶ 3, 4, Exs. B, C. Upon his release from jail, he learned that his truck was being held at Jon's Towing. Urquidi Decl. ¶ 7. Mr. Urquidi visited Jon's Towing and requested that his vehicle be released. *Id.* At that time, he was informed that to procure release of his vehicle, he would have to pay fines totaling over $800. *Id.* He was also informed that additional fines would be added every day that the vehicle remained stored on the lot. *Id.* Having just been released from jail the day prior, and out of work for over a week, Mr. Urquidi did not have the funds to pay for the vehicle's release. *Id.*

Since, the amount of fines demanded by Defendants has continued to increase drastically. As of March 23, 2023, the fines had already surpassed $2,000 and were increasing at an approximate rate of $48 for each day the vehicle remained on the lot. Declaration of Brian Hardingham ¶ 2. The following week, counsel was informed that no sale of the vehicle had been scheduled, but that one

may be scheduled at any point. Moore Decl. ¶ 6. Mr. Urquidi still cannot afford the amount demanded to procure release of the vehicle. Urquidi Decl. ¶ 8.

On March 27, 2023, counsel wrote a letter on behalf of Mr. Urquidi to the Los Angeles City Attorney's Office demanding that the City waive all costs and release the vehicle immediately. Moore Decl., Ex. D. On March 29, 2023, the Los Angeles City Attorney's Office responded to the letter via electronic mail. *Id.* ¶ 7. That response provided the City's position that Mr. Urquidi's vehicle "was lawfully impounded" and that the City "is not obligated to conduct an ability to pay hearing in connection with vehicle impounds." *Id.*, Ex. E.

To date, Mr. Urquidi's vehicle remains on the lot at Jon's Towing. On April 3, 2023, Jon's Towing advised that the amount of fines owed on the vehicle totaled $2,615.55. *Id.* ¶ 8. According to OPG's website, the amount of fines is $4,193.11, comprised of: a $156.50 tow charge, a $50.00 lien fee, $184.36 for a city tax, a $115.00 vehicle release fee, and $1,843.63 for storage. *Id.* ¶ 9, Ex. F.

On April 3, 2023, counsel learned that a sale of Mr. Urquidi's vehicle has been scheduled for May 2, 2023. *Id.* ¶ 8.

**B.** **Defendants Fail to Provide Any Procedural Mechanism to Allow Mr. Urquidi to Demonstrate an Inability to Pay.**

LAPD tows and stores vehicles in Los Angeles pursuant to Chapter 10 of the California Vehicle Code. Cal. Veh. Code § 22650 *et seq.* Section 22651(h) authorizes removal of a vehicle upon arrest. *Id.* § 22651(h). Once a vehicle "is removed pursuant to" Section 22651, "the vehicle may be impounded." *Id.* § 22651(i)(1). Upon impound, the garage that stores the vehicle will have a lien "for his or her compensation for towage and for caring for and keeping safe the vehicle," *id.* § 22851(a)(1), and the impounding agency "has a lien on the surplus that remains upon the sale of a vehicle . . . ." *Id.* § 22651(i)(5). An impounded vehicle will only be released upon payment of "the cost of towing and storing the vehicle." *Id.* § 22651(i)(4)(A). If the owner of the vehicle cannot pay those costs plus the additional fines added to the total, "the vehicle may be sold." *Id.* § 22851.1(a).

Within ten days of the tow, an individual may request "a poststorage hearing to determine the validity of the storage." *Id.* § 22852(a). The sole purpose of that hearing, according to LAPD's

internal guidelines, is "to determine whether probable cause existed to impound a particular vehicle and to determine who is responsible for the payment of the impound and/or storage fees." *2022 Department Manual*, LAPD, Vol. 4 § 226.05 (Pre-Impound Hearings), available at: https://www.lapdonline.org/lapd-manual (Jan. 26, 2023). The impounding agency "may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh. Code § 22852(c). If, at a hearing, "reasonable grounds for the storage are not established," "[t]he agency employing the person who directed the storage shall be responsible for the costs incurred for towing and storage." *Id.* § 22852(e).

The post-storage probable cause hearing is the sole procedure offered by Defendants. It is devoid of any consideration of an individual's ability to pay the amount of fines assessed to procure release of the vehicle. In response to Mr. Urquidi's demand that his vehicle be released, the City stated that it "is not obligated to conduct an ability to pay hearing in connection with vehicle impounds." Moore Decl., Ex. E. A member of LAPD confirmed to counsel that an ability-to-pay determination would not be part of any Section 22852 hearing. Hardingham Decl. ¶ 5. Yet another employee of LAPD, identified as the "auto clerk," stated to counsel that most individuals forfeit their vehicles if they are unable to get their cars out of impound immediately. *Id.* ¶ 8

## III.  ARGUMENT

### A.  Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The standards governing motions for temporary protective orders and motions for preliminary injunctions are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

**B.** **Mr. Urquidi is Likely to Succeed on the Merits.**

    **1.** **Defendants' Impounding of Mr. Urquidi's Vehicle Constituted an Unlawful Seizure Under the Fourth Amendment.**

Under the circumstances, LAPD should not have seized Mr. Urquidi's vehicle and Defendants cannot justify their actions under the community caretaking exception to the Fourth Amendment's prohibition on warrantless seizures. LAPD acted beyond the guidelines provided for by departmental policy, and the actions pursued by LAPD in towing Mr. Urquidi's vehicle were not reasonable.

"A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). One such exception is the "community caretaking" doctrine, which "is available only to 'impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic.'" *Brewster*, 859 F.3d at 1196. "Whether an impoundment is warranted under the community caretaking doctrine depends on the location of the vehicle and the police officer's duty to prevent it from creating a hazard to other drivers or from being a target for vandalism or theft." *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008). Ultimately, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).

Defendants' towing of Mr. Urquidi's vehicle cannot be justified by community caretaking and is, therefore, unlawful. A warrantless seizure under the guise of community caretaking is permissible only if it is done "in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose . . . ." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016). LAPD policy requires that officers consider the "totality of the circumstances" when "deciding whether impoundment is reasonable under the Community Caretaking Doctrine and the Fourth Amendment." *2022 Department Manual*, Vol. 4 § 222.05 (Community Caretaking Doctrine Overview). Specifically, that policy dictates that a vehicle should **_not_** be impounded in any of the following three circumstances:

1           (1) the car is parked in a residential driveway or "a legal parking space in the

2                immediate vicinity of the arrestee's residence,"

3           (2) the vehicle is parked in a "legal parking space where it is not posing a traffic

4                hazard and is not likely to be a target of vandalism or theft," or

5           (3) "a licensed passenger is present . . . and is given permission by the registered

6                owner" to operate the vehicle.

*Id.* (Impounding Vehicles When the Driver is Arrested). LAPD policy also states that "[a]n employee may impound an illegally parked vehicle when it: [o]bstructs the normal movement of traffic; [i]s left standing upon a street or highway; and [i]t is impracticable to move the vehicle to a legal parking space in the near vicinity . . . ." *Id.* § 222.20 (Illegally Parked Vehicle).

In consideration of the totality of the circumstances, it was unreasonable for LAPD to impound Mr. Urquidi's truck. "The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005). Courts assessing the community caretaking function must also consider "whether someone other than the defendant could remove the car to a safe location." *People v. Lee*, 40 Cal. App. 5th 853, 867 (Cal. App. 2019); *see also Blakes v. Superior Ct.*, 72 Cal. App. 5th 904, 914 (Cal. App. 2021) (no community caretaking justification when, among other things, "detectives did not afford petitioner the opportunity to call someone to drive his car to another location"). The truck was on a residential street outside his grandmother's and aunt's house, mere feet from the curb. Urquidi Decl. ¶ 4. Mr. Urquidi authorized LAPD to release the vehicle to a family member to allow them to move the vehicle to a legal parking space. *Id.* By declining to do so, the officers violated LAPD policy and the Fourth Amendment.

The *Caseres* case is instructive here. 533 F.3d 1064. There, the Ninth Circuit determined that police lacked the authority to impound a car where it was parked "two houses away from [the defendant's] home." *Id.* at 1075. Here, Mr. Urquidi's vehicle was even closer to his family's home. Even assuming, without conceding, that the car was not legally parked, a reasonableness standard would require the officers to release the vehicle to nearby family, who could have moved the vehicle

mere feet to park it in front of the home. Indeed, Mr. Urquidi requested that the vehicle be parked on the street and released to his family. Denying that request was unreasonable.

At the end of the day, reasonableness required that officers, in conformance with LAPD policy, allow the vehicle to remain with an individual Mr. Urquidi had authorized. As a result, the actions by LAPD in towing Mr. Urquidi's vehicle violated the Fourth Amendment.

### 2. Defendants' Towing and Storage of Mr. Urquidi's Vehicle Without Regard to His Inability to Pay Violates Due Process.

The government may not deprive any person of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1; Cal. Const. Art. I, § 7. "The determination of what procedures satisfy due process depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in" *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Orloff v. Cleland*, 708 F.2d 372, 378–79 (9th Cir. 1983). *Mathews* requires consideration of "three distinct factors:" (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

At no time, pre- or post-deprivation, was Mr. Urquidi provided a meaningful opportunity to be heard concerning his inability to pay the fines imposed. *See Fitzpatrick* at 22. Analysis under the familiar *Mathews* rubric demonstrates that the lack of process here runs afoul of constitutional requirements. *Id.* at 24–30.

First, the private interest at stake here requires due process protections. "[T]he uninterrupted use of one's vehicle is a significant and substantial private interest." *Grimm v. City of Portland*, 971 F.3d 1060, 1063 (9th Cir. 2020). That is even more so the case where, as here, the vehicle at issue is the individual's primary place of residence. *Id.* ("Towing practices disproportionately prejudice low-income populations as towing can permanently deprive low-income individuals of their vehicles (which often serve as their sole source of income or even their home)." (cleaned up)). The length of the deprivation further demonstrates that the private interest here is substantial. It has been

forty-five days since the Defendants seized the vehicle, which is significantly longer than the Ninth Circuit has deemed necessary to find a private interest. *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977).

Second, the risk of erroneous deprivation—combined with the failure of Defendants to provide for any opportunity to demonstrate an individual's inability to pay—proves fatal. Recently, this Court found that the process afforded by Defendants is wholly inadequate to assess individuals' ability to pay. *Fitzpatrick* at 17–30. The process provided by Defendants is no more than "weak tea," *id.* at 20, and ultimately "violates due process," *id.* at 30. Put another way, "none of the procedural safeguards present in the storage hearing permit the impounding agency to order the immediate release of a vehicle for lack of constitutional authority, or seemingly even to consider equitable grounds . . . ." *Id.* at 25. Indeed, the City has conceded in the *Fitzpatrick* litigation "that an officer presiding over a section 22852 [] hearing has no power to adjudicate constitutional issues even if they wanted to." *Id.* (cleaned up). Of course, then, Mr. Urquidi faces a distinct risk of erroneous deprivation because the post-storage hearing provides no opportunity to be heard on the precise issue for which he complains: he cannot afford the excessive fines assessed by Defendants.

That procedural defect, as applied to Mr. Urquidi, is of a constitutional dimension. As California courts have recognized, "due process of law requires . . . an ability to pay hearing [to] ascertain [an individual's] present ability to pay" before any fines are imposed. *People v. Dueñas*, 30 Cal. App. 5th 1157, 1164 (Cal. App. 2019). Were Defendants to conduct the necessary assessment of Mr. Urquidi's ability to pay the fines imposed here, they would have no choice but to conclude that Mr. Urquidi is unable to pay. Mr. Urquidi is an indigent man who was living in his vehicle at the time he was arrested. Urquidi Decl. ¶ 3. He supports himself through warehouse work he obtains through a temporary staffing agency, and he relies on CalFresh benefits for food assistance. *Id.* ¶ 2. Now having lost the truck that was his only shelter, Mr. Urquidi has been forced to sleep outside and rely on family members for housing. *Id.* ¶ 9. Mr. Urquidi was unable to pay the fines to procure the release of his vehicle when he was released from jail. *Id.* ¶ 7. He is still unable to pay those fines. *Id.* ¶ 8.

1    The composition of a post-storage hearing itself also provides significant concern. Post-
2  storage hearings can be conducted by an "officer or employee" of the impounding agency, so long
3  as "the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh.
4  Code § 22852(c). "[T]he lack of an impartial decisionmaker at the storage hearing heightens the risk
5  of erroneous deprivation." *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 864 (C.D. Cal. 2020).
6  Additionally, if the hearing officer determines "that reasonable grounds for the storage are not
7  established," the impounding agency "shall be responsible for the costs incurred for towing and
8  storage." Cal. Veh. Code § 22852(e). There exists, then, a "possible temptation" on the part of the
9  adjudicator to find that the vehicle was lawfully towed, so as to avoid imposing the fines on the
10 agency itself. *See Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 60 (1972). Such an
11 arrangement presents a clear conflict of interest to the point that due process of law cannot be
12 guaranteed. *See Platt v. Moore*, 15 F.4th 895, 908 (9th Cir. 2021) (finding that the presence of a
13 biased adjudicator raised due process concerns in a vehicle forfeiture proceeding). The minimal
14 process provided by Defendants lacks procedural safeguards to guarantee an adequate opportunity
15 to be heard, and therefore the risk of erroneous deprivation is great.

16    Third, and finally, the government's interests do not overshadow the significant weight of
17 the first and second factors. While Defendants may assert that they have an interest in impounding
18 vehicles that present public safety risks, they cannot simply tow and store vehicles as they see fit in
19 the name of "community caretaking" without regard for constitutional requirements. *See, e.g.*,
20 *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) ("[T]he community caretaking
21 exception does not categorically permit government officials to impound private property simply
22 because state law does."). No governmental interest is furthered by temporarily or permanently
23 depriving Mr. Urquidi of his vehicle when he has no ability to pay. *Fitzpatrick* at 29. Any
24 governmental interests that may exist are not furthered by the continued storage of Mr. Urquidi's
25 vehicle. That is especially so where release of the vehicle "would not prevent Defendants from
26 subjecting [Mr. Urquidi] to 'additional penalties in the form of late charges and collection efforts.'"
27 *Id.* at 48 (quoting *Long*, 493 P.3d at 114). Accordingly, this factor too supports granting Mr.
28 Urquidi's requested relief.

1   As a result, Defendants' practices, which provide Mr. Urquidi no avenue to demonstrate his

2   inability to pay the fines Defendants demand, are constitutionally defective.

3   **3.   Defendants' Imposition of Fines of at Least $2,615.55 Violates the Excessive Fines Clause.**

4   The California Constitution and the Eighth Amendment of the U.S. Constitution prohibit the

5   imposition of excessive fines. U.S. Const. Amend. VIII; Cal. Const. Art. I § 17. Under the Excessive

6   Fines Clause, "[a] civil sanction that cannot fairly be said solely to serve a remedial purpose, but

7   rather can only be explained as also serving either retributive or deterrent purposes, is punishment,

8   as we have come to understand the term." *Austin v. United States*, 509 U.S. 602, 610 (1993).

9   Ultimately, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the

10  principle of proportionality." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

11  *(a)   The Fines Are Not Merely Remedial as They Serve, at Least in Part, as Punishment.*

12

13  For purposes of the Excessive Fines Clause, civil penalties that "serve[], at least in part, to

14  punish the owner," are subject to the limitations of the Excessive Fines Clause. *Austin*, 509 U.S. at

15  618. Even if a provision serves remedial ends, it may be violative of the Eighth Amendment if it

16  also serves "in part to punish." *Id.* at 610. The fines imposed here are the result of both Mr. Urquidi's

17  arrest as well as his continuing failure to pay the amounts owed. These fines are designed to penalize

18  alleged violators. Accordingly, the fines serve at least in part to punish, and therefore are properly

19  considered fines under the Eighth Amendment.

20  Courts in California have rejected arguments that certain "court facilities and court

21  operations assessments [were] nonpunitive," because the assessments were imposed "on every

22  conviction for a criminal offense." *People v. Cowan*, 47 Cal. App. 5th 32, 45 (Cal. App. 2020).

23  "Because these assessments are 'conditioned on the commission of a crime,' . . . they can only be

24  explained as serving, in part, to punish." *Id.* (quoting *Dep't of Revenue of Mont. v. Kurth Ranch*,

25  511 US 767, 781 (1994)). In California, impounding a vehicle pursuant to Section 22651(h) can

26  only be effectuated following arrest. Had Mr. Urquidi not been arrested and charged with a crime,

27  of course, he would not be facing the excessive fines imposed by Defendants. Those impounds are,

28  therefore, "conditioned on the commission of a crime," *id.* at 45, and are at least partly punitive.

Additionally, courts in California and elsewhere have acknowledged that impounding schemes may serve in part to punish vehicle owners. *Fitzpatrick* at 44–45; *Long*, 493 P.3d at 109–10. In *Long*, the Washington Supreme Court held that the federal Excessive Fines Clause applied to fines assessed against a defendant whose vehicle was towed for parking violations. *Id.* at 109. While the *Long* court acknowledged that "[t]he associated costs were intended to reimburse the city for towing and storage fees," the impound statute also "show[ed] that one purpose of the ordinance is to penalize violators." *Id.* As the *Long* court concluded, "[t]he fees were imposed only as a result of the impoundment," which served as a "penalty" and was "punitive." *Id.* The fines imposed under Chapter 10 of the California Vehicle Code are no different. *Fitzpatrick* at 48 (finding that "Defendants impounded Plaintiffs' vehicles to coerce them to pay substantial civil penalties well in excess of what they owed for the original" offenses).

Moreover, "[c]ivil fines that seek to deter rule-breaking or enforce compliance are punitive in character." *Farina v. Metropolitan Trans. Auth.*, 409 F. Supp. 3d 173, 198 (S.D.N.Y. 2019). In *Farina*, the court found that a fine designed to "secure compliance with toll obligations" "reflect[ed] a purpose that is deterrent in part, and therefore punitive, as opposed to furthering the sole goal of compensating for lost revenue." *Id.* (citing *Austin*, 509 U.S. at 610). Because Defendants seek to "secure compliance with [storage] obligations" that Defendants have thrust upon Mr. Urquidi, the imposed fines are not merely remedial. Rather, the fines continue to punish the original offense as well as Mr. Urquidi's failure to make payments.

Accordingly, the costs of towing and storage imposed by Defendants are properly categorized as fines under the Excessive Fines Clause.

        *(b)*        *The Fines Are Grossly Disproportional Given the Offense Charged and Mr. Urquidi's Economic Means.*

Mr. Urquidi currently must pay at least $2,615.55 for the return of his vehicle, an amount that can only be described as excessive. The Excessive Fines Clause demands inquiry into whether a fine "is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. That analysis requires the consideration of four factors: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether

other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020). Courts in California have imposed a further consideration of "ability to pay [as] relevant to excessiveness, and they have done so in applying both the Eighth Amendment and" the California Constitution. *Cowan*, 47 Cal. App. 5th at 47 (Cal. App. 2020) (citing *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 37 Cal. 4th 707, 728 (Cal. 2005)). The towing and storage fines here are far more than double the maximum fine for the offense for which Mr. Urquidi was originally arrested. Those fines exceed an amount tolerable under the Excessive Fines Clause because they are greater than the amount deemed proportional by the California legislature, they penalize Mr. Urquidi's continuing failures to pay, and they are unjustified in consideration of Mr. Urquidi's inability to pay.

The fines imposed as a result of his arrest are clearly disproportional to the amount sanctioned by the California legislature. "[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336; *see also Pimentel*, 974 F.3d at 924. Mr. Urquidi was arrested and charged with an offense under Section 166(c)(1) of the California Penal Code. That provision makes "a willful and knowing violation of a protective order or stay-away court order" a misdemeanor, "punishable by imprisonment in a county jail for not more than one year, by a fine of not more than one thousand dollars ($1,000)," or both. Cal. Penal Code § 166(c)(1). Not only has the California legislature determined the maximum fine to be $1,000 for this offense, Mr. Urquidi was actually fined $0 by the court that sentenced him. Moore Decl., Ex. B. Nevertheless, Mr. Urquidi faces fines from the towing and storage of his vehicle—now totaling at least $2,615.55—as a result of his arrest. Defendants have gone well beyond the $1,000 deemed proportional by the California legislature and use Mr. Urquidi's arrest as a justification for extracting additional fines.

Additionally, fines imposed by Defendants result from Mr. Urquidi's failure to pay for the towing and storage. Fines imposed due to a failure to pay may proceed under the Excessive Fines Clause. *See Lemmon v. Pierce County*, No. C-21-5390-RSL, 2021 WL 3665855, at *7 (W.D. Wash. Aug. 18, 2021). Upon Mr. Urquidi's arrest, a fine would have attached for the towing and storage of his vehicle in order to remove it from the street. Those fines grow daily as Mr. Urquidi remains

unable to pay. Therefore, at the very least, the fines imposed here are at least partially punitive: they continue to penalize Mr. Urquidi for is his failure to pay, in addition to his original arrest.

When considered in light of Mr. Urquidi's low income, the fine imposed here is excessive. An individual's ability to pay is a mandatory consideration in the context of assessing an excessive fine. *Lockyer*, 37 Cal. 4th at 728; *see also Long*, 493 P.3d at 114; *Lemmon*, 2021 WL 3665855, at *7. As provided above, Mr. Urquidi relies on warehouse work and food assistance to get by. He was unable to pay the fines when he was released from jail on February 28, 2023, and the fines have only continued to accumulate since then. In *Lemmon*, a defendant was ordered to pay an additional $100 in "court-ordered legal financial obligations (LFOs)" in addition to the $800 fine imposed at sentencing. *Id.* at *1, *3. There, the Court found that a claim under the Excessive Fines Clause could proceed where "Plaintiff allege[d] that he did not pay his LFOs because he lacked the financial resources to do so." *Id.* at *7. Similarly, here, Mr. Urquidi has alleged that the fines imposed by Defendants continue to increase simply due to his inability to pay. The repeated fines imposed because of his inability to pay are unjustified.

### 4. Defendants Knowingly Created a Danger by Depriving Mr. Urquidi of His Vehicle During a Period of Risk Due to Inclement Weather.

The substantive component of the Due Process Clause protects a person's liberty interest in their own bodily security. *See Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977); *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989). The government may be held liable for substantive due process violations under the "state-created danger" doctrine when it affirmatively "exposes an individual to a danger which he or she would not otherwise have faced." *Willden*, 678 F.3d at 1002; *see also Wood*, 879 F.2d at 589–90 (government is liable where official action "affirmatively place[s] the plaintiff in a position of danger").[2] Additionally, the state must have acted with "deliberate indifference" to the known or obvious danger. *See L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). Specific intent to expose the individual to injury or danger is not required. *Kennedy v.*

---

[2] The government need not actually create a danger in order to violate the Fourteenth Amendment's guarantee of substantive due process. Rather, there is a violation where, as here, the government places an individual at greater risk of an already-existing danger. *See Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997).

*Ridgefield City*, 439 F.3d 1055, 1065 n.6 (9th Cir. 2006). Multiple courts have recognized state-created danger violations where, as here, government actions deprived individuals of their vehicles or shelters in the face of bad weather or other dangerous conditions. *See, e.g.*, *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *Wood*, 879 F.2d at 586; *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996).

Courts have routinely held that involuntary exposure to the elements is a "danger" under the substantive due process analysis. *See, e.g.*, *Munger*, 227 F.3d at 1089–90 (holding district court erred in concluding defendant police officers had not affirmatively placed an intoxicated man in danger when ejecting him from a bar late at night with inadequate clothing for the cold climate); *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1099–1103 (E.D. Cal. 2012).

In this case, all three elements of a substantive due process violation are met: (1) Defendants engaged in affirmative conduct in a way that exposed Mr. Urquidi to a danger he would not have otherwise faced; (2) the danger was known or obvious; and (3) Defendants acted with deliberate indifference. *See Willden*, 678 F.3d at 1002 (listing these three elements of a state created danger substantive due process violation).

First, Defendants engaged in affirmative conduct by towing, impounding, and refusing to release Mr. Urquidi's truck in a way that rendered him without shelter. "Affirmative conduct" exists when government's actions leave a person "in a situation that was more dangerous than the one in which they found him." *Kennedy*, 439 F.3d at 1062. Here, Defendants' conduct caused Mr. Urquidi to lose his shelter, putting him at risk of severe illness and even death.

Second, the danger to Mr. Urquidi was obvious. The officers who arrested Mr. Urquidi and ordered the tow of his truck knew he was homeless and that he depended on the truck for shelter. LAPD's own arrest report documented Mr. Urquidi's homeless status, Moore Decl., Ex. A. at 1, and Mr. Urquidi himself told the officers who arrested him that he lived in his truck, Urquidi Decl. ¶ 4. Meanwhile, record-breaking rainfall, bitter cold, and winter storms were hammering the region in late February when Mr. Urquidi was arrested and when he was released from jail, and those treacherous conditions continued into mid-March. *See, e.g.*, Eliza Kirk, *Unhoused Man Dies Outside of the Eagle Rock Vons During Cold Weather*, The Occidental (Mar. 8, 2023),

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TEMPORARY RETRAINING ORDER

https://theoccidentalnews.com/community/2023/03/08/unhoused-man-dies-outside-of-the-eagle-rock-vons-during-cold-weather/2908374. The unprecedented weather led Governor Newsom to declare a state of emergency in several California Counties, including Los Angeles. *Proclamation of a State Of Emergency*, Office of the Governor (March 1, 2023), https://www.gov.ca.gov/wp-content/uploads/2023/03/3.1.23-Storms-State-of-Emergency-signed.pdf?emrc=ac8179.        The Governor's proclamation noted that "severe winter storms struck California beginning in late February bringing damaging winds and historic precipitation, including snowfall in areas unaccustomed to snow;" that "it is forecasted that additional storms will continue to threaten counties across California, bringing strong winds, blizzard conditions [], above normal precipitation, and unusually cold temperatures;" and that "conditions of extreme peril to the safety of persons and property exist due to these storms." *Id.* In short, Defendants chose to deprive Mr. Urquidi of his sole shelter during a time when it was exceptionally dangerous to be homeless in Los Angeles.

Third, Defendants acted with deliberate indifference: they had actual knowledge that Mr. Urquidi was at serious risk of harm, and they failed to take obvious steps that would have addressed that risk. *See Grubbs*, 92 F.3d at 900. In practice, courts have found the deliberate indifference prong satisfied when an official's act was "callous" or "capricious." *See Wood*, 879 F.2d at 589; *Kennedy*, 439 F.3d at 1065.

Just as the officers in *Wood* were "chargeable with the knowledge" that it would be dangerous to impound a woman's vehicle and leave her without her transportation in a dangerous area, 879 F.2d at 590; and just as the officers in *Munger* were deliberately indifferent by leaving an underdressed man to walk home in cold weather, 227 F.3d at 1088; the officers who chose to impound Mr. Urquidi's truck knew, or at the very least were willfully blind to, the danger to his health that they exacerbated by seizing his shelter during unprecedented winter storms. Moreover, Defendants towed and impounded Mr. Urquidi's truck despite obvious alternatives that would have addressed that risk—namely, simply moving the truck to the curb or giving his keys to a family member to move—and ensured he could access his shelter once released from jail.

C.     **Mr. Urquidi Will Suffer Irreparable Harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). As demonstrated above, Mr. Urquidi's Fourth, Eighth, and Fourteenth Amendment rights have been violated by Defendants' practices. Should the Court decline to grant this application, Mr. Urquidi will suffer a grave injury in continuing to be deprived not only his vehicle, but his sole residence. To individuals facing the loss of housing, the injuries alleged here can be particularly acute. *See Smith v. Reiskin*, No. C-18-01239-JSW, 2018 WL 7820727, at *4 (N.D. Cal. Oct. 10, 2018); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). Here, the harm is significant in that not only may Mr. Urquidi *permanently* lose his vehicle upon its sale, he may also have to pay Defendants the amount of fines accrued not covered by the sale of his vehicle.

D.     **The Balance of the Equities and Public Interest Tilt in Favor of a Temporary Restraining Order.**

Any harm that may be suffered by Defendants is outweighed by the tremendous harm that Mr. Urquidi will suffer. "The third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry when the government opposes a preliminary injunction." *Poretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). In this final analysis, the Court is to consider the "burdens or hardships to [Plaintiff] compared with the burden on Defendants if an injunction is ordered," as well as any potential injunction's "impact on nonparties rather than parties." *Id.* (citing, *inter alia*, *Winter*, 555 U.S. at 24–31). As provided above, the hardships Mr. Urquidi will continue to suffer in the absence of an injunction are significant: he will be deprived of his sole residence and required to find shelter elsewhere. Defendants can claim no hardship beyond the loss of their ability sell Mr. Urquidi's vehicle. Finally, there is no impact on nonparties, as the injunction requested is narrow, relating only to Mr. Urquidi's vehicle and the fines assessed against him. Of course, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Accordingly, this final factor supports Mr. Urquidi's request for injunctive relief, and the Court should therefore grant the motion.

### E.     <u>The Court Should Waive the Posting of Security.</u>

Generally speaking, the party requesting an injunction must post a security in order for an injunction to issue. Fed. R. Civ. P. 65(c). Although Rule 65 uses mandatory language, it "invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Here, no bond is required for at least two reasons. First, the posting of security under Rule 65(c) "is not required where plaintiffs are indigent or where considerations of public policy make waiver of a bond appropriate." *Miller v. Carlson*, 768 F. Supp. 1331, 1340 (N.D. Cal. 1991). As Mr. Urquidi is indigent, no bond should be required here. Second, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). At worst, Defendants risk the loss of an ability to sell Mr. Urquidi's vehicle or collect fines from him, a harm not traditionally considered as one that would require the posting of security. *See id.*

Accordingly, the Court should waive the posting of any security by Mr. Urquidi.

## IV.     <u>CONCLUSION</u>

Because Mr. Urquidi has established a likelihood of success, the existence of irreparable harm, and that the balance of hardships is strongly in his favor, the Court should order the relief requested.

DATED: April 5, 2023

Respectfully Submitted,

PUBLIC JUSTICE

By:    *<u>/s/ Leslie A. Bailey</u>*
        LESLIE A. BAILEY
        Attorney for Plaintiff

1

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6-2</u>

2

The undersigned, counsel of record for Plaintiff Phillip Urquidi, certifies that this brief

3

contains 6,999 words, which complies with the word limit of Local Rule 11-6.1.

4

5

DATED: April 5, 2023                    Respectfully Submitted,

6

PUBLIC JUSTICE

7

8

9                                                           By:   */s/ Leslie A. Bailey*

10                                                                 LESLIE A. BAILEY
                                                                   Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TEMPORARY RETRAINING ORDER