HYDEE FELDSTEIN SOTO, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
JOSEPH S. PERSOFF, Deputy City Attorney (SBN 307986)
200 North Main Street, 6th Floor, City Hall East
gabriel.dermer@lacity.org
joseph.persoff@lacity.org
Los Angeles, CA 90012
Phone No.: (213) 978-7560
Fax No.:    (213) 978-7011

*Attorneys for Defendants,*
**CITY OF LOS ANGELES, CITY OF LOS ANGELES POLICE DEPARTMENT, MICHEL R. MOORE**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP URQUIDI;<br><br>                    Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES OFFICIAL POLICE GARAGE, a non-profit corporation; CITY OF LOS ANGELES POLICE DEPARTMENT, a public entity; MICHEL R. MOORE, in his official capacity; and JON'S TOWING, INC., a California Corporation.<br><br>                    Defendants. | **CASE NO.  2:23-cv-02568-JGB-SP**<br><br>**DEFENDANT CITY OF LOS ANGELES'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Filed concurrently with Request for Judicial Notice and Declaration of Reynaldo Martinez] |

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

I.   INTRODUCTION………….........................................................................1

II.  BACKGROUND …………..........................................................................2

    A.  After Issuance Of A Restraining Order Against Him, Plaintiff Attacked
        His Ex-Girlfriend's And Her Father's Vehicles Three Times In A Few
        Hours; Plaintiff Is Arrested And His Vehicle, Which He Left In The
        Middle Of The Street When Attacking The Vehicles, Is Impounded .......... 2

    B.  Official Police Garages ...................................................................... 4

III. LEGAL STANDARD……….…….... .......................................................5

IV.  LEGAL ARGUMENT……….. ...................................................................6

    A.  Plaintiff Is Not Likely To Succeed On The Merits ..........................................6

        1.  Impounding Plaintiff's Vehicle Abandoned In The Middle Of
            The Street Following His Arrest Was Reasonable Under The Fourth
            Amendment ...............................................................................6

            a. The Cases Plaintiff Relies On Are Inapposite ...................................... 7

        2.  There Is No Constitutional Requirement To Consider A Vehicle
            Owner's Ability To Pay The Impound Fees......................................9

            a. Plaintiff Lacks Standing To Challenge Storage Hearings ..................... 9

            b. Plaintiff Has No Substantive Right For His Ability To Pay Impound
               And Storage Fees Considered................................................10

            c. Plaintiff Cannot Establish A Likelihood Of Success Under The
               *Mathews* Test ....................................................................... 11

        3.  The Impound Fees Cannot Violate The Eighth Amendment 13

        4.  Impounding Plaintiff's Vehicle Did Not Violate His Substantive Due
            Process Rights ......................................................................16

    B.  Remaining *Winter* Factors ..........................................................17

V.   CONCLUSION ……………… ...............................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*,
    492 U.S. 257 (1989) ................................................................................ 14

*In re City of Detroit*,
    841 F.3d 684 (6th Cir. 2016) .......................................................... 13, 17

*Dep't of Housing and Urban Dev. v. Rucker*,
    535 U.S. 125 (2002) ................................................................................ 14

*Engquist v. Oregon Dep't of Agric.*,
    478 F.3d 985 (9th Cir. 2007) ................................................................ 14

*Fowler v. Benson*,
    924 F.3d 247 (6th Cir. 2019) ................................................................ 10

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ............................................................ 6, 16

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*,
    415 U.S. 423 (1974) .................................................................................. 5

*In re M.B.*,
    44 Cal. App. 5th 281 (Cal. Ct. App. 2020) ........................................ 10

*Madsen v. Boise State Univ.*,
    976 F.2d 1219 (9th Cir. 1992) (per curiam) ........................................ 9

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ......................................................................... 11, 12

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) (per curiam) ......................................................... 5

*Mendoza v. Strickler*,
    51 F.4th 346 (9th Cir. 2022) .......................................................... 10, 11

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) .................................................................. 8

ii

*People v. Caceres*,
   39 Cal. App. 5th 917 (Cal. Ct. App. 2019) ..................................................10

*People v. Dueñas*,
   30 Cal. App. 5th 1157 (Cal. Ct. App. 2019)............................................. 10, 11, 12

*People v. Hicks*,
   40 Cal. App. 5th 320 (Cal. Ct. App. 2019), rev. granted Nov. 26, 2019, Case No.
   S258946 ..........................................................................................................11

*People v. Kopp*,
   Case No. S257844.............................................................................................11

*People v. Kopp*,
   No. S257844 ......................................................................................................2

*Reno Air Racing Ass'n., Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ..........................................................................5

*Sinclair v. City of Seattle*,
   61 F.4th 674 (9th Cir. 2023) ...........................................................................16

*U.S. v. Anderson*,
   56 F.4th 748 (9th Cir. 2022) ..........................................................................6, 7

*United States v. Bajakajian*,
   524 U.S. 321 (1998).........................................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)....................................................................... 5, 16, 17, 18


**Statutes**

Cal. Civ. Code §§ 3067-3074 .............................................................................5, 12

Cal. Gov. Code § 70373........................................................................................10

Cal. Pen. Code § 594(a) .......................................................................................15

Cal. Penal Code § 166(c) ...................................................................................3, 15

Cal. Penal Code § 1465.8.................................................................................... 10

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

Cal. Veh. Code § 22650(b) ........................................................................ 12

Cal. Veh. Code § 22650(c) ........................................................................ 12

Cal. Veh. Code § 22651(h) ........................................................................ 13

Cal. Veh. Code §§ 22851, 22851.4....................................................... 5, 12

Cal. Veh. Code § 22852 ......................................................................... 9, 12

**Rules**

Fed. R. Civ. P. 65(b) .................................................................................. 5

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

## I.  INTRODUCTION

Plaintiff asks this Court to order the City of Los Angeles to release his vehicle which the City impounded because Plaintiff abandoned it in the middle of the street when he returned for the third time in a few hours to attack his ex-girlfriend's and her father's cars with a metal bar, in disregard of the law and of the domestic violence restraining order Plaintiff's ex-girlfriend recently received for protection from him. The City is not holding Plaintiff's vehicle, however: the Official Police Garage ("OPG") that impounded and is securely storing Plaintiff's vehicle is holding the vehicle subject to Plaintiff paying the OPG its fees for the costs of impound and storage of vehicle.  This is a right California law confers on tow yards.  Just like a mechanic is afforded a lien on a vehicle it repairs, California law affords tow yards liens on vehicles they impound and store.

Regardless, Plaintiff cannot establish a likelihood of success entitling him to relief against the City: Plaintiff was lawfully arrested and the police officers were justified in requesting the impound of Plaintiff's vehicle, which was left in the middle of the street without any driver present who could move it to a safe location. While Plaintiff contends the officers should have contacted his relatives to take custody of his vehicle, just a few months ago the Ninth Circuit held that the Fourth Amendment does not require police to find someone to move an arrestee's vehicle to avoid an impound.

Further, the entire basis for Plaintiff's contention the United States Constitution requires the City or the tow company to consider Plaintiff's ability to pay impound fees is an inapposite 2019 California Court of Appeal decision holding a trial court must "conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments."  That ruling has been highly criticized by other courts, and the California Supreme Court has granted review to consider whether "a court [must] consider a defendant's ability to

pay before imposing or executing fines, fees, and assessments." *People v. Kopp*, No. S257844.

For all these reasons, Plaintiff's application should be denied.

## II.  BACKGROUND

### A.  After Issuance Of A Restraining Order Against Him, Plaintiff Attacked His Ex-Girlfriend's And Her Father's Vehicles Three Times In A Few Hours; Plaintiff Is Arrested And His Vehicle, Which He Left In The Middle Of The Street When Attacking The Vehicles, Is Impounded

Plaintiff's ex-girlfriend contacted the police around 9 p.m. on February 19, 2023 due to Plaintiff coming to her residence in violation of a restraining order and smashing the windshield of her father's car.  Declaration of Reynaldo Martinez ("Martinez Decl."), Ex. G at 3.[1]  The L.A. County Superior Court issued a restraining order against Plaintiff on January 4, 2023 for the protection of his ex-girlfriend which, among other things, precluded him from coming within 150 yards of her.  Request for Judicial Notice ["RJN"], Ex. A.  Plaintiff returned around 11:40 p.m. that night and attacked the car again.  Martinez Decl., Ex. G at 3.  Both times, Plaintiff fled before the police arrived.  *Id*.

Plaintiff returned a third time after midnight.  Martinez Decl., Ex. G at 4.  When the police arrived, they observed Plaintiff's vehicle "stopped in the middle of the street" and Plaintiff swinging a metal bar approximately 3 feet long at the back of his ex-girlfriend's vehicle.  *Id*.  After observing the police, Plaintiff ran away, but the

---

[1] Plaintiff submitted the arrest report as ECF No. 11-1, but he did not redact certain sensitive and private information from the arrest report such as the dates of birth, addresses, e-mail addresses, and cell phone numbers of his ex-girlfriend, her father, or her minor sister.  The City therefore submits a redacted version of the arrest report as Ex. G to the Martinez Declaration and respectfully requests the Court strike ECF No. 11-1 from its docket.

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

police were able to apprehend and arrest him.  *Id*.  Plaintiff's ex-girlfriend had taken Plaintiff's car keys so he'd be unable to drive away this time.  *Id*.  As Plaintiff's vehicle was blocking the roadway at the time of his arrest, the officers requested the impound of the vehicle.  *Id*. at 6.[2]



As Plaintiff alleges, after pleading *nolo contendere* to a charge for violation of Cal. Penal Code § 166(c), he was released from jail and sought to retrieve his vehicle. ECF No. 5 at 9.  The tow yard informed him that, to obtain release of his vehicle, Plaintiff would have to pay $800 in accrued impound fees, consisting of a 10% city tax and a $115.00 vehicle release fee, with the remainder being fees payable to the Official Police Garage (a City contractor) for the continued storage of the vehicle.  ECF No. 5 at 9, ECF No. 11-7 at 3.  Plaintiff's vehicle is scheduled for lien sale on May 2, 2023. ECF No. 5 at 4.

---

[2] The City is lodging with the Court body worn video from the arresting officers and digital in-vehicle camera footage from the vehicle transporting Plaintiff following his arrest.  *See* Martinez Decl., Exs. H-J.

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

**B. Official Police Garages**

Plaintiff's vehicle was impounded by OPG Jon's Towing Inc., a corporation registered with the California Secretary of State.  RJN, Ex. B; ECF No. 11-6.  Jon's Towing contracted with the City to provide towing and storage services.  RJN, Ex. C. Pursuant to the contract, Jon's Towing has a number of obligations, including (1) "[a]ll towed and impounded vehicles must be maintained within the confines of the OPG storage facility and not upon the public streets, sidewalks, or public property, ¶ 4.1.d.; (2) the storage facility "must be paved, clean, and fenced for maximum security, and must be lighted during hours of darkness to afford distinct visibility to all portions of the facility," ¶ 4.2.c; (3) "[t]he OPG must implement and maintain in proper working order security measures at the Primary Storage Facility to prevent the loss or theft of vehicle parts and accessories and personal property," ¶ 4.2.d; (4) "[u]nobstructed access must be provided to any stored vehicle.  Vehicles must be parked and separated so as to preclude the possibility of damage," ¶ 4.2.e; (5) maintenance of certain staffing levels, including ensuring proper training and certification, ¶ 5.1; (6) maintenance of certain equipment requirements, ¶¶ 5.2, 5.3; and (6) weekly and monthly reporting requirements, ¶ 9.0.  RJN, Ex. C at 17-18, 23-24, 30-31.

Jon's Towing is entitled under the contract to charge for its impound and storage of vehicles, not in excess of an amount approved by the Board of Police Commissioners.  RJN, Ex. C at 32-33, ¶ 10.1.  This includes a fee for the towing of a vehicle, which is charged based on an hourly rate for the time actually required to impound the vehicle, and a fee for storing the vehicle, which is charged based on a daily rate.  RJN, Ex. C at 33, ¶¶ 10.2, 10.3; *see also* ECF No. 11-7.  Jon's Towing is not only entitled to these fees pursuant to its contract with the City, but California law confers tow yards with a lien on an impounded vehicle as security for its impound and

storage services.  *See* Cal. Veh. Code §§ 22851, 22851.4; Cal. Civ. Code §§ 3067-3074.

Additionally, Jon's Towing is required to collect from the vehicle owner and remit to the City a vehicle release fee of $115 and a 10% parking occupancy tax.  RJN, Ex. C at 34, ¶¶ 10.5, 10.6; Ex. D, E (L.A.M.C. §§ 21.15.2, 80.77.1).  But, "if the OPG is lawfully entitled to collect any fee from the owner of an impounded vehicle and an authorized City employee directs that the fee not be assessed against the owner . . . , the City will pay such fees to which the OPG was legally entitled."  RJN, Ex. C at 32, ¶ 10.1.d.  Jon's Towing does not receive compensation from the City for towing and storage of vehicles.   RJN, Ex. C at 32, ¶ 10.1 ("The City will not provide any compensation to the OPG for towing or storage services rendered under terms of this Agreement.").

## III.    LEGAL STANDARD

Governed by Fed. R. Civ. P. 65(b), an ex parte temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).  A temporary restraining order is "an extraordinary and drastic remedy," and "courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

A plaintiff seeking a temporary restraining order must establishing the following elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def.*

5

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

*Council, Inc.*, 555 U.S. 7, 20 (2008).  The first element, "likely to succeed," is the most important and can be decided before considering the others.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## IV.   LEGAL ARGUMENT

### A. Plaintiff Is Not Likely To Succeed On The Merits

#### 1.   Impounding Plaintiff's Vehicle Abandoned In The Middle Of The Street Following His Arrest Was Reasonable Under The Fourth Amendment

Plaintiff argues the impound of his vehicle was an unreasonable seizure under the Fourth Amendment: "LAPD should not have seized Mr. Urquidi's vehicle and Defendants cannot justify their actions under the community caretaking exception to the Fourth Amendment's prohibition on warrantless seizures."  App. for TRO at 6.  The basis for Plaintiff's argument is that the Fourth Amendment required the police officers to reach out to his grandmother and aunt who lived on the block where the car was stopped and release the vehicle to them.  App. for TRO at 7.  Plaintiff's argument fails because it was rejected by the Ninth Circuit mere months ago.

In *U.S. v. Anderson*, 56 F.4th 748 (9th Cir. 2022), a driver was pulled over, told the sheriff he was parked in the driveway of a friend, and asked the sheriff if he could request to have a friend come get his truck to avoid its impound.  *Id*. at 753-54.  The sheriff refused the request and impounded the vehicle, which the driver alleged violated the Fourth Amendment.  *Id*. at 754-55.   Specifically, the driver disputed "that a valid community caretaking purpose existed because he told the deputies that he had a friend who was available to move the truck more quickly than a tow truck could, but the deputies refused to allow him to contact his friend."  *Id*. at 760.  The Ninth Circuit rejected this argument, explaining that, even if the driver had a friend available who could have retrieved his truck, the Fourth Amendment only requires an officer act

6

reasonably; the officer is not required to consider the existence of alternative less intrusive means for removing a vehicle. *Id.* Further, the court noted that the friend was not present and the driver had a significant criminal history, so it was not unreasonable for the deputy to impound the vehicle "rather than allow him to supposedly call an unknown person at 2:00 a.m. to retrieve it for him." *Id.*

Similarly, here, at the time Plaintiff's vehicle was impounded neither his aunt nor grandmother were present. *Anderson* establishes the police were not required to go knock on their door in the middle of the night to see if they would like to take custody of Plaintiff's car—especially in light of Plaintiff's criminal history and it being after midnight. Regardless, the relevant video reflects that Plaintiff did not request his aunt or grandmother be contacted to take custody of his vehicle, but rather that he requested the officers allow *him* to park his vehicle. *See* Martinez Decl., Ex. J at 2:36.

Additionally, Plaintiff provides no evidence that either his aunt or grandmother were available to receive the vehicle or that they would have agreed to take custody of the vehicle if asked to do so. *Anderson* is therefore determinative that Plaintiff cannot establish a likelihood of success on his Fourth Amendment claim.

Plaintiff's argument relies on two decisions from California Courts of Appeal and two from the Ninth Circuit. None support Plaintiff's position.

### a. The Cases Plaintiff Relies On Are Inapposite

The two decisions from the California Court of Appeal Plaintiff cites do not support Plaintiff's position, and they are not binding anyway, *Anderson* is. First, *People v. Lee* merely states that "whether someone other than the defendant could remove the car to a safe location" is relevant to "the caretaking inquiry." 40 Cal. App. 5th 853, 867 (Cal. Ct. App. 2019). The significance of this comment by the *Lee* court was its next statement: "The absence of a proper community caretaking function suggests an impound is a pretext to investigate without probable cause, a purpose

7

which is inconsistent with an inventory search." *Id*.  Here, Plaintiff does not allege or argue that the impound of the vehicle was a pretext for a criminal investigatory purpose; therefore, the *Lee* statement is inapposite.

Second, Plaintiff cites *Blakes v. Sup. Ct.*, which also involved a challenge to an automobile search.  72 Cal. App. 5th 904 (Cal. Ct. App. 2021).  In *Blakes*, the issue was whether the impound was justified by a community caretaking function "other than suspicion of evidence of criminal activity," because, if not, then the warrantless search was not a permissible inventory search.  *Id*. at 913.  The court found the facts demonstrated the impound was motivated by a criminal investigatory purpose, rather than a community caretaking purpose because at the time the vehicle was impounded it was legally parked, not blocking traffic or at risk of theft or vandalism, nor did the detectives "afford petitioner the opportunity to call someone to drive his car to another location.  More importantly, the evidence shows the impound decision was motivated by an investigatory purpose." *Id*. 914.  Once again, Plaintiff here does not contend the impound of his vehicle was a pretext to conduct a search of his vehicle for a criminal investigatory purpose.  Therefore, like *Lee*, *Blakes* is inapposite.

As to the Ninth Circuit cases, *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005) is distinguishable because there the vehicle was impounded from the vehicle owner's driveway and the driver's husband, who could legally operate the vehicle, was present.  Here, in contrast, the vehicle was stopped in the middle of a public street and there was no one present that Plaintiff contends could take custody of the vehicle.  *See id*. at 865-66 ("[W]hen [the officer] issued citations and called for the vehicle to be impounded, the vehicle was already parked in the Mirandas' home driveway.  Mr. Miranda was licensed to drive the car.  Under these circumstances, the Mirandas' car was not creating any impediment to traffic or threatening public safety.").  *U.S. v. Casares* is distinguishable because in that case the car was legally parked at the curb of

8

a residential street two houses away from the arrestee's home and there was no "evidence that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic."  533 F.3d 1064, 1075 (9th Cir. 2008).  Plaintiff's vehicle here was not legally parked and there was no one present who could do so.

### 2.  There Is No Constitutional Requirement To Consider A Vehicle Owner's Ability To Pay The Impound Fees

Plaintiff argues his due process rights were violated because he was not "provided a meaningful opportunity to be heard concerning his inability to pay the fines imposed."  App. for TRO at 8.  Plaintiff does not have a likelihood of success because (1) he has not subjected himself to the process he challenges and therefore has no standing; (2) there is no substantive right for a person's ability to pay impound fees to have been considered, and therefore there is no process due to him; and (3) the Cal. Veh. Code § 22852 storage hearing provides drivers a meaningful opportunity to have the decision to impound a vehicle reconsidered.

### a.  Plaintiff Lacks Standing To Challenge Storage Hearings

Plaintiff's claim is a challenge to the storage hearings offered to drivers under Cal. Veh. Code § 22852, but Plaintiff has not attended such a hearing, as this Court recognized.  Apr. 10, 2023 Minute Order at 3-4, ECF No. 20.  Plaintiff therefore lacks standing to challenge the process.  *See Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (per curiam) ("There is a long line of cases, however, that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.").  Nor has Plaintiff contended or put forth evidence that he did not request a Section 22852 hearing because it would be futile.

9

**b.  Plaintiff Has No Substantive Right For His Ability To
Pay Impound And Storage Fees Considered**

Plaintiff's due process claim fails substantively as well because there is no substantive right for a driver to have their ability to pay considered.  "The procedural aspects of the Due Process Clause do not require that the State afford a process for evaluating a factor that, under the applicable substantive law, is not relevant to the ultimate decision at issue."  *Mendoza v. Strickler*, 51 F.4th 346, 361 (9th Cir. 2022) [3]; *see also Fowler v. Benson*, 924 F.3d 247, 259 (6th Cir. 2019) ("If Plaintiffs' indigency is not relevant to the state's underlying decision to suspend their licenses, then giving them a hearing—or any other procedural opportunity—where they can raise their indigency would be pointless.").

The only authority Plaintiff cites for the proposition that his ability to pay impound and storage fees must have been considered is the California Court of Appeal decision *People v. Dueñas*, 30 Cal. App. 5th 1157 (Cal. Ct. App. 2019).  That case is unlike the situation here.  *Dueñas* held that the assessment provisions of Cal. Gov. Code § 70373 and Cal. Penal Code § 1465.8 cannot be imposed without a determination that the defendant is able to pay.  *Id*. at 1168.  *Dueñas* has nothing to do with payment of fees for vehicle impounds.  In fact, among the substantial negative treatment *Dueñas* has received (606 instances according to Westlaw) are decisions declining to extend its holding to situations much more similar than here.  *See, e.g.*, *In re M.B.*, 44 Cal. App. 5th 281, 282-84 (Cal. Ct. App. 2020) (declining to extend *Dueñas* to the imposition of a mandatory minimum juvenile restitution fine); *People v. Caceres*, 39 Cal. App. 5th 917, 926-29 (Cal. Ct. App. 2019) ("Although we do not reach whether *Dueñas* was correctly decided as to those extreme facts, in our view, the

_____

[3] The Ninth Circuit denied the plaintiff's petition for rehearing en banc in *Mendoza* on April 17, 2023.

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

due process analysis in *Dueñas* does not justify extending its holding beyond those facts."); *see also People v. Hicks*, 40 Cal. App. 5th 320, 324-29 (Cal. Ct. App. 2019) (concluding that *Dueñas* was wrongly decided), rev. granted Nov. 26, 2019, Case No. S258946.  The issue is currently pending before the California Supreme Court.  *People v. Kopp*, Case No. S257844 ("Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments?").

While not entirely analogous to this case, the Ninth Circuit's *Mendoza* decision suggests Plaintiff has no constitutional right to have his ability to pay for the impound and storage fees considered.  *Mendoza* held that the suspension of a driver's license for not paying parking citations did not violate either the Equal Protection Clause or the Due Process Clause, because it was rationally related to the state's interest in punishing and deterring traffic violations.  51 F.4th 346, 359-61 (9th Cir. 2022).

The fees at issue here are not any fine or punishment like in *Mendoza*.  Absent the 10% City parking tax and the $115 fee payable to the City, the fees are for compensating the OPG for its services of impounding and securely storing a vehicle.  There is a legitimate interest in having a regulated tow service in the City to remove cars that, like Plaintiff's, are blocking the middle of the street with no one available to move them.

Therefore, Plaintiff has no substantive right to have his ability to pay the impound and storage fees considered, and he has not established a likelihood of success on his due process claim.

### c.  Plaintiff Cannot Establish A Likelihood Of Success Under The *Mathews* Test

While Plaintiff has no substantive right to have his ability to pay considered, and therefore there is no need to consider the procedure available to him, even if there were, Plaintiff's claim would still fail under the *Mathews* test.  The *Mathews* test is

11

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

used to determine the adequacy of the procedure available and considers: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiff focuses on the process provided by Cal. Veh. Code § 22852.

The first factor weighs in Plaintiff's favor, but the second and third do not. There is no risk of erroneous deprivation due to nonpayment of towing and storage fees as California law confers the OPG with a lien on the vehicle—just like a mechanic who performs work on the vehicle—and therefore entitles the OPG to hold the vehicle until its lien is satisfied. *See* Cal. Veh. Code §§ 22851, 22851.4; Cal. Civ. Code §§ 3067-3074. Section 22852 does not provide for consideration of ability to pay because the OPG's lien on the vehicle is not a fine like at issue in *Dueñas*; the lien is to compensate the OPG for its services rendered and the amount is tied to the time spent towing the vehicle and the number of days securing the vehicle.

As to Plaintiff's ability to challenge the initial impound of his vehicle via a Section 22852 hearing, the hearing provides adequate safeguards to avoid an erroneous deprivation. A Section 22852 storage hearing provides the vehicle owner "the opportunity for a poststorage hearing to determine the validity of the storage." At those hearings, "the storage agency shall have the burden of establishing the authority for, and the validity of, the removal." Cal. Veh. Code § 22650(c). Further, any vehicle impound "is only reasonable if the removal is necessary to achieve the community caretaking need." Cal. Veh. Code § 22650(b). Therefore, had Plaintiff requested a storage hearing, LAPD would have had the burden of proof of establishing that the

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

impound of Plaintiff's vehicle complied with both Cal. Veh. Code § 22651(h) and community caretaking.

For the third factor, as discussed above, the City has a strong interest in regulated tow services.  If OPGs were required to take reduced fees for its services, they may no longer be able to comply with the contractual requirements of providing certain levels of staffing, security, and recordkeeping.  Or they may stop business altogether, and the City would be without towing services.  Alternatively, the OPGs may charge more to others to subsidize the fees for people of lower means—or the City would be required to cover the difference.  *See In re City of Detroit*, 841 F.3d 684, 700 (6th Cir. 2016) ("In a rate structure based on ability to pay, every dollar that a customer would not pay because of an inability to pay is one more dollar that other customers, or taxpayers, would have to pay. It is not irrational for the state to determine not to permit its municipalities to adopt such an alternative rate structure.").  Additionally, there would be a substantial administrative burden, and possibly other Constitutional issues, if every officer conducting a storage hearing was also required to determine the vehicle owner's ability to pay—would that require reviewing income tax returns, bank statements, pay stubs?

For all these reasons, Plaintiff cannot establish a likelihood of success on his due process claim.

### 3.  The Impound Fees Cannot Violate The Eighth Amendment

Plaintiff argues that the impound and storage fees he is required to pay to retrieve his vehicle violate the Excessive Fines Clause of the Eighth Amendment. App. for TRO at 11-14.  Plaintiff has not established a likelihood of success on this claim.

As Plaintiff notes, as of April 3, the total amount of fees owed totaled $2,349.49, adding up the various charges in Plaintiff's Exh. F.  ECF No. 11-6.[4]  Of that total amount, the $184.36 (10%) City tax and $115.00 Vehicle Release Fee, while initially paid to the OPG, are ultimately remitted to the City.  *See* RJN Ex. C at 34, ¶¶ 10.5, 10.6.  The remaining fees are paid to the OPG, not the City, and therefore cannot constitute an "excessive fine" under the Eighth Amendment.  *See Dep't of Housing and Urban Dev. v. Rucker*, 535 U.S. 125, 136, n.6 (2002) ("And termination of tenancy 'is neither a cash nor an in-kind payment imposed by and payable to the government' and therefore is "not subject to analysis as an excessive fine."); *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989) ("[T]he history of the Eighth Amendment convinces us that the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government.").  Therefore, Plaintiff must demonstrate a likelihood that the 10% City Parking Tax and $115 Vehicle Release Fee violate the Excessive Fines Clause.  He cannot.

The tax cannot constitute a "fine" under the Excessive Fines Clause because it is not punishment for any offense.  *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1006 (9th Cir. 2007) ("We reject Engquist's Excessive Fines Clause challenge because the Clause applies only to government acts that are intended to punish, and the split-remedy scheme is not intended to punish Engquist.").  Plaintiff would be subjected to paying the tax regardless of the reason why his vehicle was impounded.  *See* Ex. G, ECF No. 11-7.  Further, the 10% tax applies to "every occupant occupying parking space."  RJN, Ex. D [L.A.M.C. § 21.15.2].  Therefore, all that remains is whether the $115 vehicle release fee, which is levied on every person whose vehicle

---

[4] It is unclear why Exhibit F provides the total charge is $4,193.11, as the enumerated fees add up to $2,349.49, not $4,193.11.

14

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

was impounded "for a violation of any provision of state or local law," violates the Excessive Fines Clause.  RJN, Ex. E [L.A.M.C. § 80.77.1(a).].  It does not.

The relevant test looks at four factors: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense. *United States v. Bajakajian*, 524 U.S. 321, 337-40 (1998). Here, Plaintiff was charged with four counts of violating Cal. Pen. Code § 166(c), which carries a maximum fine of $1,000 due to "a willful and knowing violation of a protective order," and two counts of violating Cal. Pen. Code § 594(a), which carries a maximum fine of $10,000 due to vandalism leading to the destruction of $400 or more. Ex. B, ECF No. 11-2.  The $115 fee is therefore substantially less than what Plaintiff could have been subject to for the crimes he was charged with, and is presumably substantially less than the cost to repair the vehicles he attacked.  Further, Plaintiff likely would not have been able to return to vandalize the vehicles two more times if not for using his vehicle, as it allowed him to evade the police.

In *Pimentel v. City of L.A.*, the Ninth Circuit found that a $63 parking fine does not violate the Excessive Fines Clause because it "is not grossly disproportional to the underlying offense of overstaying the time at a parking space."  974 F.3d 917, 925 (9th Cir. 2020).  If a $63 fine for overstaying a parking space is not grossly disproportional, then a $115 vehicle release fee due to smashing multiple car windows in violation of a restraining order certainly is not either.

Plaintiff is unable to establish a likelihood of success on his Eighth Amendment claim.

### 4.  Impounding Plaintiff's Vehicle Did Not Violate His Substantive Due Process Rights

Plaintiff contends his substantive due process rights were violated because his vehicle was impounded when he was arrested and, because he used his vehicle for shelter, he had nowhere to shelter during cold temperatures, subjecting him to a state-created danger.  App. for TRO at 14-16.  "For a plaintiff to prevail on a state-created danger claim, the government must 'affirmatively create[ ] an actual, particularized danger [that the plaintiff] would not otherwise have faced.'"  *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006)).  To meet this standard, the defendant's conduct must shock the conscience and the defendant must recognize the unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.  *Sinclair*, 61 F.4th at 680-81.

Plaintiff has not met this standard for a number of reasons: (1) the impounding officer had no idea when Plaintiff would be released from jail and what the weather would be like when he was released; (2) Plaintiff's vehicle could have been retrieved the following day, and the impounding officer had no reason to believe it would not have been retrieved—either by Plaintiff or one of his family members; (3) there were additional shelters opened in Los Angeles for people without shelter due to the cold temperatures, *see* RJN, Ex. F [https://lacity.gov/highlights/winter-shelters-open-people-experiencing-homelessness].  Plaintiff therefore cannot establish a likelihood of success on this claim.

In sum, Plaintiff has not established a likelihood of succeeding on the merits of any of his claims.  As such, the Court need not analyze the remaining *Winter* factors.  *Garcia*, 786 F.3d at 740 ("Because it is a threshold inquiry, when 'a plaintiff has failed

to show the likelihood of success on the merits, we "need not consider the remaining three [*Winter* elements].""").

## B. Remaining *Winter* Factors

The City does not dispute that, if the OPG does not release the car and this Court does not order the release of Plaintiff's car without any payment of fees and Plaintiff does not pay the accrued towing and storage charges, his car will be sold at lien auction. The balance of equities and public interest do not weigh in Plaintiff's favor, however. As discussed above, the OPGs provide a necessary service to the City and its citizens of removing vehicles that either cannot be operated, are inhibiting the free flow of traffic, or pose safety and vandalism risks. The fees Plaintiff owes compensate the OPGs for that service. *See* RJN, Ex. C at 32, ¶ 10.1.d. ("[I]f the OPG is lawfully entitled to collect any fee from the owner of an impounded vehicle and an authorized City employee directs that the fee not be assessed against the owner . . . , the City will pay such fees to which the OPG was legally entitled."); *In re City of Detroit*, 841 F.3d at 700 ("In a rate structure based on ability to pay, every dollar that a customer would not pay because of an inability to pay is one more dollar that other customers, or taxpayers, would have to pay. It is not irrational for the state to determine not to permit its municipalities to adopt such an alternative rate structure."). And in this case, because Plaintiff's vehicle was towed because he was arrested, the City should not subsidize his criminal activity. That is surely not in the public interest.

///

///

///

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER

## V.   CONCLUSION

Because the *Winter* factors do not weigh in Plaintiff's favor, his ex parte application for a temporary restraining order should be denied.[5]

Dated: April 18, 2023            HYDEE FELDSTEIN SOTO, City Attorney
                                 SCOTT MARCUS, Chief Assistant City Attorney
                                 GABRIEL S. DERMER, Assistant City Attorney
                                 JOSEPH S. PERSOFF, Deputy City Attorney

                                 By:    /s/ Gabriel S. Dermer
                                        Gabriel S. Dermer
                                        Assistant City Attorney
                                        Attorneys for Defendants

---

[5] If the Court does intend to order release of the vehicle, it is respectfully requested that the Court conduct an ability to pay hearing to determine if Plaintiff can reasonably afford to pay any of the fees, in order to limit the cost to the City.

OPPOSITION TO EX PARTE APP. FOR TEMPORARY RESTRAINING ORDER